(No. 6439. December 2, 1937.)

STATE, Respondent, v. GEORGE WOODWARD, Appellant.

[74 Pac. (2d) 92.]

Weldon Schimke, Laurence E. Huff and A. L. Morgan, for Appellant.

J. W. Taylor, Attorney General, and Ariel L. Crowley, Assistant Attorney General, for Respondent.

AILSHIE, J.—About 5 o'clock in the afternoon of June 28, 1936, Evelyn Harmon arrived in Moscow from Lewiston. Appellant had previously made arrangements to take her from Moscow to Rockford, Washington, where her family resided. While the two were in a restaurant in Moscow Miss Harmon slipped out, took appellant's car and was gone about an hour. When she returned she again went into the restaurant and appellant sat outside in the car and waited for her. About 7:30 P. M. Woodrow Spray, complaining witness in this case, and a nephew of appellant, drove up with his wife and a Mr. Hoke. In conversing with the three appellant showed anger because of Miss Harmon's delay in getting started on the trip and threatened to throw her clothes out in the street. Spray advised him not to do that and went into the restaurant to speak to Miss Harmon, after which she came out and got into appellant's car. Mrs. Spray testified that, while Spray was in the restaurant, appellant came over to their car and made some insulting remarks to her; appellant denied making any offensive remarks. Miss Harmon testified that Spray, on being informed of these remarks, had

come over to appellant's car and cursed the appellant, "the worst cuss words you could ever think of." In a teasing way she yelled out the window, as she and appellant were driving away, "come on to the edge of town and we will have it out." The three occupants of the other car all testified to hearing this remark.

Appellant's car started down the street and Spray's car followed. In the meantime, Miss Harmon, who testified she "didn't want to get in no fight," jumped out of the car. The two cars arrived at the intersection of two streets which form "deadends" near the edge of the city. There was a slight collision between them there, Spray's car bumping into the left back fender of appellant's car. Appellant's car stopped, parked on the right side of the street going south. Spray got out of his car and walked to the driver's side of appellant's car and opened the door, saying: "if this is as far as you are going, George, come on and get out."

Appellant's testimony discloses that Spray "grabbed me by the shirt first with one hand, and then with the other he hit me about three licks . . . . After he [Spray] hit me the third time," appellant said he reached over and got his gun. "When I reached for the gun he got me in the back of the head, here. I intended to hit him right over the head, and he knocked the gun right up . . . . I don't know what happened from then on—I heard the first shot and that's all I know. . . . . I didn't come to myself until we got down to the jail." Spray denied hitting appellant before the shot was fired.

Appellant was 56 years old at the time of the trial and weighed 200 pounds. Spray was 24 years old and weighed 172 pounds.

The testimony disclosed that at the time of the affray appellant's gun was discharged three or four times. Hoke testified he "got a finger shot off"; he testified to hearing "positively" three shots fired. A resident of the neighborhood where the altercation took place testified that after the first shot was fired Spray was "dodging around between the two cars." She heard more than three shots fired. She also testified to moving Mrs. Spray over to the curb after the

latter had been shot in the leg. Young boys who resided near by also testified to the shooting. Spray testified that after the shooting he didn't know whether appellant started to drive off or whether the car rolled but it ran into a telephone pole about 50 feet from where the shooting occurred. It seems that appellant did not drive the car this latter distance.

Driskill, a police officer, testified to seeing appellant lying about the middle of the street downhill a little ways from the car which was then over the curb; that "he looked like he had been in a terrific battle"; that he found a gun in the bottom of appellant's car. At the time he found it there five shots had been discharged and one had misfired. There was a hole shot through the top of the car, practically above the driver's seat. Spray testified that he saw appellant take a gun out of the panel on the dash of his car just before backing out from in front of the restaurant.

Dr. Loehr's testimony shows that he found severe traumatic conditions on the left side of appellant's head; that his eye was black and there was a large area turning black back of his left ear; that the next morning it was almost impossible for appellant to get his mouth open; "appeared just like there had been a hard blow against the mastoid, or solid bone—no bad cuts, just bruises. . . . . I think he was dazed. I think it is very possible that it was from a blow he had had."

Mr. Lind, also resident of the neighborhood of the shooting, testified to a bullet coming through the front door of his home which "just missed my forehead by about two inches." Mrs. Lind testified to seeing two men; that she saw one "knock the other down in the road. He tromped on him and kicked him. I would say it was very severe." When asked by the court whether he kicked or beat appellant, while he was lying on the ground, Spray answered: "I wouldn't say I didn't." On repeating the question, the same answer was given by Spray.

The information charged appellant "with the crime of an Assault with a deadly weapon, . . . . a 38 special revolver, . . . . and that said assault was committed by the said de-

fendant by firing said revolver at the person of Woodrow Spray with intent to produce great bodily injury.'' A plea of ''Not guilty'' was entered. The case was tried to the court and a jury. A verdict of guilty was returned. Appellant was sentenced to an indeterminate term of from six months to two years in the state penitentiary. He has appealed from the judgment.

Several specifications of error have been assigned but we think the only ones that will require consideration are those urged against certain of the instructions given to the jury by the court. The defendant requested that the court give to the jury the following instruction:

''You are instructed that the defendant, under the Constitution of Idaho, was entitled to keep and bear firearms for his security and defense.''

The court gave this instruction and added thereto the following:

''The legislature, however, has the power to regulate the exercise of this right, and this you may consider in connection with the other instructions given you herewith.''

It is contended by appellant that this addition or modification to the instruction as given by the court was confusing and misleading to the jury and had the effect of impairing appellant's constitutional right, for the reason that the court at no time told the jury wherein or whereby or in what manner the legislature had regulated this constitutional right guaranteed to the defendant to bear arms for his ''security and defense.'' There is merit to the appellant's contention, especially in view of the fact that the court told the jury that they might, in considering the right of defendant to bear arms, also take into consideration the power of the legislature to regulate the exercise of this right, thereby implying that the legislature had in some way regulated the exercise of this right and on the other hand left the jury to speculate as to the extent or nature of such regulation. The jury might well have thought that this instruction signified that appellant had no right to have the gun in his possession at the time this trouble arose.

■■ It is argued, however, by the attorney general that the subsequent instruction of the court, as to the law of self-defense and the extent to which one may go in defending his person, served to point out the regulation which the legislature had placed on the right to bear arms. We do not consider this argument as sound nor is it a sufficient answer to the objections urged by appellant. Under the constitution, the right to bear arms may not be denied by the legislature. (Sec. 11, art. 1; *In re Brickey*, 8 Ida. 597, 70 Pac. 609, 101 Am. St. 215, 1 Ann. Cas. 55.) The legislature only has the power to ''regulate the exercise of this right,'' that is, among other things, it may prohibit carrying concealed weapons, or prescribe the kind or character of arms that may or may not be kept, carried or used, and various other things of a regulatory character. On the other hand, the instruction as to the right of self-defense has nothing to do with the right to bear arms. That instruction only deals with the question as to the conditions and circumstances under which firearms or any other kind of weapon or thing may be used; so that we have in the instruction under consideration the admonition to the jury that the legislature ''has the power to regulate the exercise of this right,'' and that the jury might ''consider this in connection with the other instructions given.''

Complaint is also made of the action of the court in giving the following instruction:

''The right of self defense has been recognized in law ever since its existence, and is expressly recognized by our own statute, and the conditions under which it may be asserted are clearly defined by the statute. These are that the party himself was not the first aggressor, or if the aggressor, that he had in good faith endeavored to decline any further struggle before he did the act complained of by the state as being an assault with a deadly weapon; second that the act done by defendant was *necessary to prevent the infliction upon him of a great bodily injury by* the person alleged to have been assaulted by the defendant.''

Objection is urged against the italicized part of the foregoing instruction.

We think it should be conceded in the outset that if this were a homicide case, where the discharge of the firearm had

resulted in death, this instruction would be a correct exposition of the law on the subject. Here, however, the complaining witness, who it is claimed was assaulted with a deadly weapon, was not touched in any manner and no battery was committed on him. The gun was discharged by appellant in an opposite direction from Spray, but the state contends this act was committed with intent to inflict great bodily injury on the person of the complaining witness, Woodrow Spray. Appellant contends, and the evidence affords support to his contention, that he was merely defending himself and endeavoring to ward off a personal attack made by the complaining witness. He further says that he was trying to avoid a personal conflict and that while in his own car he was approached by the complaining witness who struck and beat him and that he intended to use the gun only as a club with which to protect himself and that in the scuffle the gun was discharged.

In *People v. Lopez*, 238 App. Div. 619, 265 N. Y. Supp. 211, 213, the Supreme Court of New York had under consideration an instruction to the same effect as the instruction given here, and the comment of the court as there made may well be applied to the instruction here under consideration. The court said:

"This charge was erroneous, in that it is applicable only in a homicide case and not to cases where a person is pleading the right to defend himself and has done something less than taking someone's life. A *person who is assaulted or interfered with by another without provocation may use sufficient force to repel the attack without being guilty of assault even though he may not believe himself to be in danger of grievous bodily harm.*" (Italics ours.)

The character of instruction, as applied to a case involving facts such as we have under consideration here, was considered by the Supreme Court of Iowa in the case of *State v. Goering*, 106 Iowa, 636, 77 N. W. 327, and the court said:

"The complaint made of this instruction is that it limits the right of defendant to act in self-defense to cases where he is in reasonable fear of losing his life or of suffering great bodily harm, at the hands of his adversary. . . . . A very cursory reading will show that there is good ground for the

criticism made. Four times in this single paragraph is the thought repeated that, if Leits assaulted defendant, the latter had no right to defend himself unless it reasonably appeared to him that his life was in danger, or that he was likely to suffer great bodily harm from such assault. As an abstract proposition of law, this statement is incorrect. The rule is elementary that one unlawfully assailed may, in self-protection, repel force with force. The extent to which he may go is to be measured by the character of the assault; but the right, as we have stated it, exists under any and all circumstances.''

The same question arose in like manner in *Deshazo v. State,* 118 Tex. Cr. 42, 37 S. W. (2d) 751, wherein defendant was indicted for an assault with intent to murder and was convicted of an aggravated assault. In passing on the instruction to which the defendant took exception, the court said:

''The appellant excepted to the court's charge upon the grounds that it limited appellant's right of self-defense only as against an unlawful attack producing a reasonable expectation or fear of death or serious bodily injury, and that in doing so his limitation of the rights of the appellant was too restrictive and contrary to the law; that the appellant had a legal right to defend himself from any unlawful attack on the part of the party assaulting, and to limit the rights of the appellant to defend himself against an attack producing a reasonable expectation or fear of death or serious bodily injury is denying the appellant his rights under the law, and resulted in prejudice to his legal rights, and is telling the jury that he cannot defe1.. himself from any unlawful attack on the part of the party assaulting.

''The learned trial judge charged upon self-defense, but throughout the charge he made the right of the appellant to an acquittal depend on the ground of self-defense against an attack upon the part of Bud Collins producing a reasonable expectation or fear of death or serious bodily injury.

''The evidence in this case was conflicting as to whether the appellant was being attacked by Bud Collins, and, if attacked, whether with knucks or only with his fists. This evidence raised the issue of aggravated assault, and that issue was properly submitted to the jury by the court. The jury

was not anywhere in said charge instructed as to the right of the appellant to defend himself against an unlawful attack upon the part of the witness Collins, even though it was not of sufficient gravity to evidence a purpose to either kill or seriously injure appellant. Aggravated assault being one of the issues in this case, as well as assault to murder, a charge which only authorized an acquittal if it reasonably appeared to appellant that he was in danger of death or serious bodily injury was too restrictive of the rights of appellant under the decisions of this court, which have uniformly held that one charged with any grade of assault has the right of self-defense against any unlawful attack, even though such attack does not amount to an effort to inflict death or serious bodily injury. [Citing cases.] From these authorities we are forced to the conclusion that the trial judge was in error in his charge so excepted to, and that the appellant's contention should be sustained.''

■ It is true as stated in this instruction that one, assailed or threatened with imminent danger to life or of great bodily injury, has the right to defend himself, and if the danger or peril is of such apparent imminence, may use a deadly weapon in his defense; but this does not include the entire scope of the right of self-defense. The right of self-defense arises the moment an attack is made, even though the party assailed may not have reason to believe that his assailant intends to inflict upon him ''great bodily injury.'' It may be, as it perhaps was here, that the assailant intends to chastise or whip his victim without any real or apparent intention of inflicting serious bodily injury, but the moment he makes the attack, or it becomes reasonably apparent that he intends to execute such purpose and has the present ability so to do, the right of defense arises and clothes the intended victim with legal authority to resist, and, if possible, prevent the execution of such unlawful purpose. No man has a right to lay hostile, threatening hands on another, except when he is armed with legal authority to do so; and the man who does so acts at the risk of being met with sufficient superior force and violence to overcome such assault.

██ This fundamental right to defend oneself from any kind of attack is recognized by a written law in this state. Sec. 19–201, I. C. A., reads:

"Lawful resistance to the commission of a public offense may be made:

"1. By the party about to be injured.

"2. By other parties."

While sec. 19–202 provides that:

"Resistance sufficient to prevent the offense may be made by the party about to be injured:

"1. To prevent an offense against his person, or his family, or some member thereof.

"2. To prevent an illegal attempt by force to take or injure property in his lawful possession."

The law does not require anyone to submit meekly to indignities or violence to his person,—he may lawfully repel them or it with as much of such character of necessary resistance as is at the time available to him. We stated this same principle in *State v. McGreevey*, 17 Ida. 453, at 467, 105 Pac. 1047, and it is as sound now as it was then.

 Now, in the present case, it seems clear from the evidence that Spray knew or at least thought he could whip and beat appellant to his satisfaction without risk to himself; appellant no doubt felt that Spray could do so and it may be that there was not enough imminent manifestation of intention to inflict great bodily injury to justify the use of a deadly weapon, but if that was true, still it did not deprive appellant of the right to resist force and violence by a sufficient *quantum* of force or violence on his part to protect his person. The instruction was too restricted for the state of facts it was intended to cover. The other instructions, except the one relating to the right to bear arms as hereinabove considered, all appear to have been clear and fair statements of the law and free from error.

The judgment must be reversed and it is so ordered and the cause is remanded.

Holden, Budge and Givens, JJ., concur.

Morgan, C. J., deeming himself to be disqualified, did not sit at the hearing nor participate in the decision.