986 P.2d 346

STATE of Idaho, Plaintiff–Respondent,

v.

Shawn HANSEN, Defendant–Appellant.

No. 24888.

Court of Appeals of Idaho.

Aug. 10, 1999.

**324**

Alan E. Trimming, Ada County Public Defender; Erik J. Glatte, Deputy Public Defender, Boise, for appellant. Erik J. Glatte argued.

Hon. Alan G. Lance, Attorney General; Rebekah A. Cude, Deputy Attorney General, Boise, for respondent. Rebekah A. Cude argued.

LANSING, J.

A jury found Shawn Hansen guilty of misdemeanor battery, Idaho Code §§ 18–903, –904. He appeals from the judgment of conviction, arguing that the magistrate erred in admitting hearsay evidence and in refusing to instruct the jury on self-defense.

1. In the months between Hansen's arrest and his trial, Slagel did not respond to inquiries from the prosecutor. Although she did ultimately testify,

## BACKGROUND

At about 6:30 p.m., on June 20, 1997, Cynthia Slagel entered the Boise City Police headquarters, asking to make a complaint against her boyfriend, Shawn Hansen. She was then interviewed by Officer Nickerson. According to Slagel's statement to Nickerson, when Slagel arrived at her home that evening, Hansen was at her home and was intoxicated. He started fighting with her, pushed her into the house, kicked things out of her hands, and smashed furniture. When she tried to leave, he repeatedly pushed her onto a couch and locked the door. Slagel said the fight lasted about half an hour before she was able to escape, whereupon she immediately walked to the police station, which was about a ten-minute walk away. After hearing Slagel's story, Officer Nickerson asked her to make a written statement, and she complied. Based upon Slagel's complaint, Nickerson arrested Hansen and charged him by citation with misdemeanor battery.

Prior to the trial in the magistrate division of the district court, the prosecutor filed a motion for a determination that Slagel's out-of-court statements to the police would be admissible at trial. Acting on the motion, the magistrate unconditionally admitted Slagel's written statement, ruling that it fell within the excited utterance hearsay exception, Idaho Rule of Evidence 803(2). It is unclear whether this pre-trial ruling also covered Officer Nickerson's testimony about Slagel's out-of-court statements to him.

At trial the prosecutor questioned Officer Nickerson about his conversation with Slagel at the police station. Defense counsel objected that Slagel's statements to Nickerson were hearsay, but the court ruled that the testimony fell within the excited utterance exception. Accordingly, Nickerson testified about Slagel's oral statements at the police station.

After presenting Officer Nickerson's testimony, the prosecutor called Slagel as a witness.[1] In her testimony she gave a description of the altercation with Hansen

the State obtained permission from the court to treat her as a hostile witness.

that differed markedly from that contained in the written statement she had given the police. She testified that Hansen did not push her through the door, as she had written in her statement, but rather, he "put his arm on my back and I walked in before him," and that this touching was consensual. Additionally, she testified that he had pushed her onto the couch only once instead of continually pushing her back onto the couch when she tried to get up, as she had written in her statement. Lastly, she testified that she hit Hansen first, slapping him twice before he pushed her onto the couch. Her written statement contained no reference to such slapping.

After this testimony, the prosecutor offered Slagel's written statement into evidence to impeach her. Defense counsel acknowledged that the statement was admissible for impeachment but objected, on hearsay grounds, to allowance of the written statement for the truth of the matters stated therein. The court ruled, however, that it was admissible both for impeachment and for the truth of its content, again holding that the excited utterance hearsay exception applied to the writing. The court later instructed the jury that it could consider the statement both for impeachment purposes and for the truth of the matter asserted.

At the conclusion of the trial, Hansen requested that the jury be instructed on self-defense in light of Slagel's testimony that she had slapped him before he pushed her. This request was denied by the trial court. The jury found Hansen guilty, and Hansen appealed to the district court, which affirmed.

On further appeal, Hansen argues that the trial court abused its discretion in admitting Slagel's out-of-court oral and written statements to Officer Nickerson and in refusing to give a self-defense instruction.

## ANALYSIS

### A. Hearsay

■ The excited utterance exception to the hearsay rule authorizes the admission of hearsay if the testimony recounts "[a] statement relating to a startling event or condition while the declarant was under the stress of excitement caused by the event or condition." I.R.E. 803(2). To fall within the excited utterance exception, an out-of-court statement must meet two requirements. First, there must be a startling event that renders inoperative the normal reflective thought process of the observer, and second, the declarant's statement must be a spontaneous reaction to that event rather than the result of reflective thought. *State v. Parker,* 112 Idaho 1, 4, 730 P.2d 921, 924 (1986); *State v. Burton,* 115 Idaho 1154, 1156, 772 P.2d 1248, 1250 (Ct.App.1989).

■ Whether a statement falls within the excited utterance exception is a discretionary determination to be made by the trial court, *Id.; State v. Valverde,* 128 Idaho 237, 239, 912 P.2d 124, 126 (Ct.App.1996), giving consideration to the totality of the circumstances. *State v. Stover,* 126 Idaho 258, 263, 881 P.2d 553, 558 (Ct.App.1994). The circumstances to be considered include the amount of time that elapsed between the startling event and the statement, the nature of the condition or event, the age and condition of the declarant, the presence or absence of self-interest, and whether the statement was volunteered or made in response to a question. 31 MICHAEL H. GRAHAM, FEDERAL PRACTICE AND PROCEDURE § 6753, at 275–76 (Interim ed.1997).

The importance of the passage of time as a factor is illustrated in *Burton.* In that case, this Court considered a defendant's statement made five minutes after an altercation in which the defendant had fired a gun, hitting two people. The defense sought to introduce an exculpatory statement made by the defendant to his son as they were driving away from the site of the shooting. This Court held that the trial court had properly refused admission of the statement as an excited utterance because the remark "was removed by time and distance from the events." We noted that the rationale underlying the excited utterance exception is the "special reliability which is regarded as furnished by the excitement suspending the declarant's powers of reflection and fabrication." *Id.* at 1156, 772 P.2d at 1250 (quoting E. CLEARY, MCCORMICK ON EVIDENCE § 297

at 855 (3d ed.1984)). We concluded that because of the lapse of time between the startling event and the statement, as well as the self-serving content of the statement, the circumstances did not point to "special reliability" that would render the remark admissible under the excited utterance exception.

■ Similar considerations lead us to conclude that Slagel's remarks in her conversation with Officer Nickerson cannot be regarded as excited utterances. The ten-minute interval between the conclusion of Slagel's fight with Hansen and her arrival at the police station was sufficient time for reflective thought and fabrication. Although Slagel's statements cannot be termed self-serving in the same sense as the defendant's exculpatory statement in *Burton,* Slagel's anger with Hansen could have provided a motivation to fabricate or exaggerate in her description of the events to Officer Nickerson. The statements that the court admitted were not an exclamation or burst of words in sudden reaction to a startling occurrence but a lengthy recitation of the circumstances surrounding the fight and a request to press charges. Slagel's protracted narrative to Officer Nickerson, made at least ten minutes after the altercation with Hansen had ended, cannot be viewed as the sort of spontaneous reaction that carries the indicia of reliability contemplated by I.R.E. 803(2).

■ We are cognizant that in a number of cases, the appellate courts of this state have affirmed the admission, as excited utterances, of out-of-court statements made after a much greater lapse of time from the startling event. *See Parker, supra; State v. Bingham,* 116 Idaho 415, 776 P.2d 424 (1989); *State v. Kay,* 129 Idaho 507, 927 P.2d 897 (Ct.App.1996); *Valverde, supra; State v. Parkinson,* 128 Idaho 29, 909 P.2d 647 (Ct. App.1996); *Stover, supra; State v. Peite,* 122 Idaho 809, 839 P.2d 1223 (Ct.App.1992). However, the excited utterances in those cases all fell within the discrete category of statements made by sexual assault victims regarding their rape or molestation, and the decisions themselves acknowledge that the excited utterance exception is given more liberal application in that circumstance. The

line of cases began with *Parker,* where a fourteen-year-old girl alleged that she had been given a ride by a stranger who took her to a house where he eventually raped her. Shortly after the offense, the victim went to a nearby house where she telephoned her mother and asked that her family pick her up and bring the police. About three hours after the alleged crime, following the arrival of family members, the victim made a tape recorded statement in which she said that she had been raped. The Idaho Supreme Court affirmed the admission of this statement, but explained that the nature of this particular offense was a primary consideration in allowing such an expansive application of the excited utterance exception:

> In sex crime cases, the excited utterance exception often receives broader application than in other cases.... The tendency to admit such statements, even when made hours after the event, probably lies in their high probative value. Given that sexual assault crimes violate one's most intimate physical and mental feelings, the victim can reasonably be expected not to discuss the crime until meeting with a family member, close friend, law enforcement agent, or other trusted individual.
>
> ....
>
> In the instant case, the victim got away from Parker, apparently within a few minutes after the rape, went directly to the home of a total stranger, called her parents, and waited silently for their arrival. When they did arrive, she did not immediately tell them what happened. Instead, she waited a few minutes for her cousin, a State Fish and Game officer, to arrive. She then related to him the events of that morning, which he taped. According to the Fish and Game officer's testimony, at the time of her statement, she was crying, red-eyed, looked very tired, and looked like a lot had happened to her.

A sexual assault is one of the most distressing experiences a person could have. The distress is likely to remain bottled up in the victim until she or he can talk about what happened. Since a fourteen-year-old girl told a trusted individual of her alleged sexual assault at virtually the first oppor-

tunity she had while in a state of obvious emotional distress, the district court did not abuse its discretion in admitting her taped statement as an excited utterance.

The subsequent cases cited above have adhered to the *Parker* court's directive that the unique stresses associated with a sex offense, particularly for a youthful victim,[2] lends reliability to the victim's initial statements about the offense even after the passage of some hours from the event.[3] These cases do not suggest, however, that in other contexts, the excited utterance exception should be as broadly applied.

In the present case, the startling event was not a sex crime but a fight between the declarant and her boyfriend in which the boyfriend pushed the declarant onto the couch more than once and kicked things out of her hand. The declarant here is an adult woman, not a child, and although Nickerson testified that Slagel was crying and upset when she spoke with him, she had not suffered any physical trauma. These circumstances convince us that the broad application of the excited utterance exception approved by *Parker* and its progeny is not permissible here.

■ The same factors that militate against the admission of Slagel's spoken statements weigh even more heavily against the admission of her written statement as an excited utterance. The writing was a one-page narrative of the events leading up to Slagel's appearance at the police station. It was composed after not only a ten-minute walk to the police station but also an intervening interview with Officer Nickerson. The very fact that it is in writing suggests time and opportunity for reflective thought in its composition. By no means can this writing be called a spontaneous declaration made while the declarant's normal process of reflection was suspended.[4]

The State emphasizes Slagel's testimony that when she spoke to Nickerson she was "madder than she had ever been." The State contends that this factor weighs in favor of admissibility of her statements because it shows that Slagel was in an emotional state at the time. We think, however, that Slagel's anger could be viewed as undermining the reliability of the statements because it may provide a motive for her to fabricate a story implicating Hansen as a means of retaliation. There is a clear distinction between being so emotionally affected by a just-witnessed event that one's normal powers of reflection and fabrication are suspended, and simply being angry.

■ We are similarly unpersuaded by the State's argument that admission of the hearsay was harmless error because the content of Slagel's written statement was revealed to the jury when the prosecutor used the statement to impeach Slagel. The defense conceded that the statement was admissible for impeachment purposes, but this does not render the magistrate's hearsay ruling harmless. Had use of the evidence been limited to impeachment, the writing would not stand as substantive evidence of the acts for which Hansen was charged with battery, and the jury should have been instructed accordingly. I.R.E. 105. We therefore conclude that the trial court's error in admitting Slagel's out-of-court statements for the truth of their content necessitates a new trial.

### B. Self-defense Instruction

We consider next the trial court's refusal of Hansen's request for a jury instruction on self-defense. In declining to give the instruction, the court explained:

I'm going to decline to give any instruction as it relates to self-defense, not only for the reason expressed by [the prosecutor] that there's been no evidence that's been presented that it would even require this court to give the self-defense instruc-

---

2. With the exception of *Peite, supra,* in all of the post-*Parker* cases approving this broad application of Rule 803(2) the declarant was a child.

3. Arguably, I.R.E. 803(24) would have been a preferable basis for admitting the hearsay statements in *Parker* and the cases that followed it.

4. The State has not cited, and we have not found, any reported decision from any jurisdiction holding that a writing fell within the excited utterance exception to the hearsay rule.

tion, but more importantly, for the reason that it is my understanding and my review of the case law indicating that before I can justify having a self-defense instruction being brought before the jury, I have to have some admission that, in fact, an act has been committed and that there's justification or excuse or reason for that particular act. I have none of that here. In fact, what I have is I have an absolute denial to the underlying charge of battery. I've got no admission whatsoever that there were any acts committed. The defense has elected not to put on any evidence here today, and as a consequence, I'm going to deny the introduction of any self-defense instructions.

. . . .

You have to establish there was imminent danger of great bodily harm, that the acts were justifiable. You'll need to take your client through that particular kind of testimony to see whether or not there will be a jury instruction that will necessarily comport with what the testimony is here today.

Although defense counsel expressed a belief that fear of *great* bodily harm is unnecessary to establish self-defense as a justification for a misdemeanor battery, the court adhered to its ruling, expressing the view that "imminent danger of great bodily harm … is what the law requires, even on a misdemeanor."

Hansen asserts that the trial court erred both in the determination that the defendant must be in fear of *great* bodily harm in order to assert a justification of self-defense and in determining that Hansen was required to testify to this state of mind in order to have the defense presented to the jury. He maintains that Slagel's testimony that she slapped Hansen twice before he pushed her onto the couch is sufficient evidence to support the claim of self-defense.

■ In instructing jurors, "the court must state to them all matters of law necessary for their information." I.C. § 19–2132. A defendant is entitled to have the jury instructed on every defense or theory of defense having

any support in the evidence, *State v. Kodesh,* 122 Idaho 756, 758, 838 P.2d 885, 887 (Ct. App.1992); *State v. Evans,* 119 Idaho 383, 807 P.2d 62 (Ct.App.1991); *State v. Mason,* 111 Idaho 660, 669, 726 P.2d 772, 781 (Ct. App.1986); *State v. Pennell,* 108 Idaho 669, 701 P.2d 289 (Ct.App.1985), including, of course, the law of self-defense. *State v. Allen,* 113 Idaho 676, 679, 747 P.2d 85, 88 (Ct.App.1987); *State v. Spurr,* 114 Idaho 277, 279, 755 P.2d 1315, 1317 (Ct.App.1988).

■ The right to defend oneself from attack is embodied in several Idaho statutes. Idaho Code § 19–201 provides that "lawful resistance to the commission of a public offense may be made: (1) By the party about to be injured"; and § 19–202 specifies that "[r]esistance sufficient to prevent the offense may be made by the party about to be injured: (1) to prevent an offense against his person…." Section 19–202A further provides that "[n]o person in this state shall be placed in legal jeopardy of any kind whatsoever for protecting himself … by reasonable means necessary …."[5] These statutes do not require that the defendant believe himself to be in danger of great bodily injury in order to assert self-defense as justification for a battery.

The Idaho Supreme Court considered whether fear of great bodily injury is necessary in *State v. Woodward,* 58 Idaho 385, 74 P.2d 92 (1937). At issue there was the propriety of a self-defense instruction given in a trial for assault with a deadly weapon. The trial court had instructed the jury that self-defense would justify the assault only if the defendant's act was "necessary to prevent the infliction upon him of great bodily injury." The Supreme Court held that, although the instruction would be correct if the defendant were being tried for a homicide, it was erroneous in a prosecution for aggravated assault. The Court stated, "A person who is assaulted or interfered with by another without provocation may use sufficient force to repel the attack without being guilty of assault even though he may not believe himself

---

**5.** Additional self-defense provisions applicable only to homicide charges are found in I.C. § 18–4009.

to be in danger of grievous bodily harm." *Id.* at 392, 74 P.2d at 95 (quoting *People v. Lopez,* 238 App.Div. 619, 265 N.Y.S. 211, 213 (1933)). The Court explained that the quantum of force that may be used in self-defense is dependent upon the nature of the attack upon the defendant:

> 'The rule is elementary that one unlawfully assailed may, in self-protection, repel force with force. The extent to which he may go is to be measured by the character of the assault; but the right, as we have stated it, exists under any and all circumstances.'
>
> . . . .
>
> No man has a right to lay hostile, threatening hands on another, except when he is armed with legal authority to do so; and the man who does so acts at the risk of being met with sufficient superior force and violence to overcome such assault.
>
> . . . .
>
> The law does not require anyone to submit meekly to indignities or violence to his person,—he may lawfully repel them or it with as much of such character of necessary resistance as is at the time available to him.

*Id.* at 393–95, 74 P.2d at 96–97 (quoting *State v. Goering,* 106 Iowa 636, 77 N.W. 327 (1898)).

Accordingly, it was not necessary that there be evidence that Hansen reasonably feared great bodily harm in order to warrant a self-defense instruction. Rather, evidence of reasonable fear of some level of bodily harm will suffice.[6]

■ Nor is it necessary that this evidence come through the defendant's own testimony as the trial court indicated. A defendant is entitled to have the jury instructed on his theory of the case whenever there is *some* supportive evidence for that theory. *Mason, supra; Pennell, supra.* Admittedly, testimony to support the defense ordinarily comes through the defendant, but we per-

ceive no reason for a rule that a defendant must invariably waive his Fifth Amendment right against self-incrimination in order to have the jury instructed on self-undefense.

■ The present case is unusual in that the "complainant," having reconciled with the defendant and recanted parts of her complaint, provided testimony from which a jury could infer that Hansen acted in self-defense. Slagel testified that the only unwanted touching occurred when Hansen pushed her onto a couch, and that Hansen took this action only after Slagel had slapped him twice. We make no judgment about the credibility of this evidence, but only note that a jury could infer from Slagel's testimony that Hansen pushed her onto the couch in order to prevent her from slapping him again. This slapping was sufficient "bodily harm" from which a jury could find that Hansen's shoving Slagel onto the couch was a measured and reasonable act of self-defense.

The evidence is sufficient to raise a factual issue as to whether Hansen shoved Slagel in order to prevent further slapping or was acting out of unprovoked anger. Resolution of such factual issues is for the jury, and the matter should have been submitted to the jury through a self-defense instruction.

### CONCLUSION

We conclude that the trial court erred in admitting evidence of Slagel's oral and written out-of-court statements for the truth of their content and also erred in refusing to instruct the jury on self-defense. Accordingly, we vacate the judgment of conviction and remand for a new trial.

Chief Judge PERRY and Judge Pro Tem BURDICK concur.

---

6. The distinction between the fear of death or great bodily harm that is necessary to justify a homicide, and the requirement of only a fear of *some* bodily harm to substantiate self-defense in a prosecution for battery is incorporated in Ida-

ho Criminal Jury Instruction 1517. It provides for inclusion of the term "death or great bodily harm" or only "bodily harm," depending upon whether the prosecution is for homicide or for battery.