**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 41093**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2014 Unpublished Opinion No. 710 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: September 2, 2014 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| ROBERT ARTHUR RICHMOND, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Richard D. Greenwood, District Judge.

Judgment of conviction for aggravated assault, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Justin M. Curtis, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Daphne J. Huang, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Chief Judge

Robert Arthur Richmond appeals from his judgment of conviction after a jury found him guilty of aggravated assault. Specifically, he raises challenges concerning the jury instructions. For the reasons that follow, we affirm.

**I.**

**FACTS AND PROCEDURE**

Richmond and his then fiancée (the victim) were involved in a physical dispute while driving from Garden City to Meridian. Shortly after arriving at a house in Meridian, the victim made her way to a bar where a bartender called the police. Richmond was charged by information with aggravated assault "by punching [the victim] in the head and/or face causing severe swelling and bruising to her eyes and face, and bleeding to her nose and/or by grabbing her by the neck and applying pressure." Richmond was also alleged to be a persistent violator. The case proceeded to trial, and the State first presented testimony from an officer who

1

interviewed the victim and photographed the victim's injuries. This officer also interviewed and photographed Richmond. The State then called the victim who testified that Richmond punched her and then, at one point, used a seat belt to choke her. A paramedic who examined the victim also testified, recalling what injuries the victim had. Another officer testified about Richmond's injuries, and the State introduced photographs of the inside of the vehicle depicting blood spatter within the car. Richmond testified in his defense, claiming that he acted in self-defense.

Although the jury was instructed on self-defense, they found Richmond guilty of aggravated assault. After the verdict, Richmond acknowledged he was a persistent violator. Prior to sentencing, Richmond filed a motion and memorandum for judgment of acquittal or, in the alternative, motion for new trial. Relevant to this appeal, Richmond asserted that a new trial should be granted because the court misdirected the jury, Idaho Code § 19-2406(5), by not providing a unanimity instruction. Following a hearing, the district court issued a memorandum decision and order denying the motion for acquittal and denying motion for new trial. The district court subsequently imposed a unified sentence of nine years, with two years determinate, and Richmond appeals.

## II.

## ANALYSIS

Richmond contends that the district court committed fundamental error by providing an erroneous jury instruction relating to Richmond's claim of self-defense. Richmond further argues that the court erred by denying his motion for a new trial. Specifically, Richmond argues that the district court should have given a unanimity instruction. Whether the jury has been properly instructed is a question of law over which we exercise free review. *State v. Severson*, 147 Idaho 694, 710, 215 P.3d 414, 430 (2009). When reviewing jury instructions, we ask whether the instructions as a whole, and not individually, fairly and accurately reflect applicable law. *State v. Bowman*, 124 Idaho 936, 942, 866 P.2d 193, 199 (Ct. App. 1993).

### A.     Self-Defense Instruction

Acknowledging that he did not object below, Richmond contends that the district court committed fundamental error by incorrectly instructing the jury on self-defense. Even if a defendant failed to object to a jury instruction before the trial court, we may review the jury instruction for fundamental error. *State v. Adamcik*, 152 Idaho 445, 472, 272 P.3d 417, 444 (2012) ("When a defendant fails to object to a jury instruction, we will still review the jury

2

instruction for fundamental error."). "Before we consider whether there was fundamental error, we must first determine whether the trial court erred at all." *Id.* at 473, 272 P.3d at 445; *State v. Johnson*, 145 Idaho 970, 977, 188 P.3d 912, 919 (2008). In order to prove fundamental error, a defendant must demonstrate: "(1) the alleged error violated an unwaived constitutional right; (2) the alleged error plainly exists; and (3) the alleged error was not harmless." *Adamcik*, 152 Idaho at 473, 272 P.3d at 445; *State v. Perry*, 150 Idaho 209, 228, 245 P.3d 961, 980 (2010).

Self-defense is a recognized defense to aggravated assault. *See State v. Woodward*, 58 Idaho 385, 394, 74 P.2d 92, 96 (1937) (discussing the applicability of self-defense in a case involving an aggravated assault); *see generally* I.C. §§ 19-201, 19-202, and 19-202A. The criminal jury instruction on self-defense, Idaho Criminal Jury Instruction 1517, enumerates what must be proven to find that a defendant acted in self-defense: (1) the defendant must have believed that the defendant was in imminent danger of bodily harm; (2) the defendant must have believed that the action the defendant took was necessary to save the defendant from the danger presented; (3) a reasonable person, under similar circumstances, would have believed that the defendant was in imminent danger of bodily injury and believed that the action taken was necessary; and (4) the defendant must have acted only in response to that danger and not for some other motivation. The burden of production is on the defendant (who must "assert" self-defense) to make a prima facie defense. *State v. Camp*, 134 Idaho 662, 666 n.2, 8 P.3d 657, 661 n.2 (Ct. App. 2000). The burden is then on the prosecution to prove beyond a reasonable doubt that the defendant has not established self-defense. I.C.J.I. 1517. That is, when the self-defense jury instruction is utilized, the State must prove beyond a reasonable doubt that at least one of the elements of the defense was not established by the evidence.

We begin by noting that the only jury instruction setting forth the elements of self-defense was erroneous, as the State concedes. Jury instruction 20[1] informed the jury that they

---

[1] Jury instruction 20 set forth the following elements of self-defense:

> An assault is justifiable if the defendant was acting in self-defense.
> In order to find that the defendant acted in self-defense, all of the following conditions must be found to have been in existence at the time of the assault:
> 1. The defendant must have believed that the defendant was in
>    *imminent danger of death or great bodily harm.*

3

had to find that "The defendant must have believed that the defendant was in imminent danger of death or great bodily harm." As the Idaho Supreme Court explained in 1937, "A person who is assaulted or interfered with by another without provocation may use sufficient force to repel the attack without being guilty of assault even though he may not believe himself to be in danger of grievous bodily harm." *Woodward*, 58 Idaho at 392, 74 P.2d at 95. Therefore, the jury instruction incorrectly instructed the jury they had to find that the defendant believed he was in imminent danger of death or great bodily harm; the jury instruction should have required the jury to find the defendant must have believed that he was in imminent danger of bodily harm. *See* I.C.J.I. 1517.

Having concluded that there was an error, we next analyze whether Richmond has demonstrated the first *Perry* prong, whether the alleged error violated an unwaived constitutional right. Citing *Jackson v. Virginia*, 443 U.S. 307, 309 (1979), Richmond contends that the first

---

> 2. In addition to that belief, the defendant must have believed that the action the defendant took was necessary to save the defendant from the danger presented.
> 3. The circumstances must have been such that a reasonable person, under similar circumstances, would have *believed that the defendant was in imminent danger of death or great bodily injury and believed that the action taken was necessary.*
> 4. The defendant must have acted only in response to that danger and not for some other motivation.
> 5. When there is no longer any reasonable appearance of danger, the right of self-defense ends.
>
> In deciding upon the reasonableness of the defendant's beliefs, you should determine what an ordinary and reasonable person might have concluded from all the facts and circumstances which the evidence shows existed at that time, and not with the benefit of hindsight.
>
> The danger must have been present and imminent, or must have so appeared to a reasonable person under the circumstances. A bare fear of death or great bodily injury is not sufficient to justify an assault. The defendant must have acted under the influence of fears that only a reasonable person would have had in a similar position.
>
> The burden is on the prosecution to prove beyond a reasonable doubt that the battery was not justifiable. If there is a reasonable doubt whether the battery was justifiable, you must find the defendant not guilty.

(Emphasis added.)

4

prong is satisfied because the Due Process Clause requires the State to prove every element of a crime beyond a reasonable doubt. The State, however, argues that it has no burden under the United States Constitution to disprove an affirmative defense. *Martin v. Ohio*, 480 U.S. 228, 232 (1987). We agree with the State. "In a criminal trial, the State must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004). However, the Due Process Clause of the United States Constitution does not require the State to disprove a defendant's affirmative defense. *See Martin*, 480 U.S. at 236. Therefore, contrary to Richmond's assertion, there is no violation of the United States Constitution when the jury is improperly instructed on the affirmative defense of self-defense. Because Richmond does not argue that the Idaho Constitution requires, as a guarantee of due process, that the State disprove a defendant's affirmative defense, Richmond has not demonstrated that the erroneous jury instruction violated one of his unwaived constitutional rights. Accordingly, Richmond has not demonstrated fundamental error.

**B.    Motion for a New Trial**

Richmond next asserts that the district court erred by denying his motion for a new trial. Specifically, he argues that the district court should have given a unanimity instruction. A decision on a motion for new trial is reviewed under an abuse of discretion standard. *State v. Egersdorf*, 126 Idaho 684, 687, 889 P.2d 118, 121 (Ct. App. 1995). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989). Whether a trial court properly applied a statutory provision to the facts of a particular case is a question of law over which we exercise free review. *State v. Horn*, 124 Idaho 849, 850, 865 P.2d 176, 177 (Ct. App. 1993).

Richmond contends that the district court misdirected the jury by failing to give a unanimity instruction, although he did not object to the lack of a unanimity instruction. *See* Idaho Code § 19-2406(5) (providing that a district court may grant a new trial "[w]hen the court has misdirected the jury in a matter of law, or has erred in the decision of any question of law arising during the course of the trial"). The State, under the misimpression that Richmond is

5

appealing the failure to give a jury instruction rather than the denial of the motion for new trial, contends that Richmond's claim must be reviewed for fundamental error. According to the State, Richmond was not entitled to a unanimity instruction, and thus he cannot show fundamental error. The district court, in relevant part, denied the motion for new trial, finding that Richmond was not entitled to a unanimity instruction.

On appeal, Richmond argues that his testimony revealed two distinct events involving different types of force. According to Richmond's brief before this Court, one event involved him punching the victim while the other event involved him using the up-and-under move:

> He testified that first, [the victim] punched him and he punched her in return. He testified that after landing a couple of punches, [the victim] stopped. This is one distinct event involving a particular type of force by both [the victim] and Mr. Richmond. However, after stopping this behavior, [the victim] then began to push herself onto Mr. Richmond, and he responded by using the "up and under" move. This is a separate event involving a different type of force by both [the victim] and Mr. Richmond. And this is critical in a case like this that involves self-defense, because, based on the fact that [the victim] used two different types of force, the jury was required to determine which if any acts by Mr. Richmond were reasonable in response to that force.

The State argues that Richmond was appropriately charged with a single count of aggravated assault because Richmond's threatening behavior during the incident included punching, strangling, or both. According to the State, Richmond's assault on the victim occurred during one drive and involved one continuous threat of great bodily harm, based on multiple physical acts of violence.

Richmond was charged with aggravated assault. Aggravated assault is an assault by any means or force likely to produce great bodily harm. I.C. § 18-905(b). An assault is either an unlawful attempt, coupled with apparent ability, to commit a violent injury on the person of another, I.C. § 18-901(a), or an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent, I.C. § 18-901(b).

"Under Idaho law, a trial court is required to instruct the jury that it must unanimously agree on the defendant's guilt in order to convict the defendant of a crime." *Severson*, 147 Idaho at 711, 215 P.3d at 431. A trial court is generally *not* required to instruct the jury that they must unanimously agree on the facts giving rise to the offense. *Id.*; *see also Schad v. Arizona*, 501 U.S. 624, 631 (1991) (plurality opinion) ("We have never suggested that in returning general

6

verdicts . . . jurors should be required to agree upon a single means of commission."). But a unanimity instruction is required "when the defendant commits several acts, each of which would independently support a conviction for the crime charged." *Severson*, 147 Idaho at 711, 215 P.3d at 431. The question in this case, then, is whether Richmond's course of conduct constituted a single offense or multiple offenses. *See id.*; *cf. Johnson*, 145 Idaho at 978, 188 P.3d at 920 (concluding that it was "unnecessary to instruct the jury that it must be unanimous as to the theoretical basis for committing the offense (aider and abettor or principal) because aiding and abetting is not a separate offense from the substantive crime"). "Whether a course of criminal conduct constitutes a single or multiple offenses depends on whether or not the conduct constituted separate, distinct and independent crimes and requires an inquiry into the circumstances of the conduct and consideration of the intent and objective of the actor." *Miller v. State*, 135 Idaho 261, 267, 16 P.3d 937, 943 (Ct. App. 2000) (quoting *State v. Bush*, 131 Idaho 22, 33-34, 951 P.2d 1249, 1260-61 (1997)) (internal quotation marks omitted).

According to the victim's testimony at trial, the victim and Richmond began to exchange words when Richmond punched the victim, hitting her so hard that her head hit the windshield.[2] Richmond then called her more names and punched her in the eyes and nose, and then continued to punch her. The victim did not recall trying to punch back, but she did recall that she tried to grab the steering wheel at one point. The victim was not sure how many punches Richmond landed on her, claiming she was in and out of consciousness. After Richmond punched her several times, Richmond utilized the victim's seat belt and started choking her with it; the victim recalled that the pressure was so great that she thought she was going to die and recalled exclaiming, "You're killing me and I have kids." According to her, she lost consciousness sometime after Richmond started choking her and they eventually made it to Garden City without any additional fighting. On re-cross-examination, the victim acknowledged that she had told the officer who met with her that Richmond strangled her with his right hand, not his seat belt.

Richmond testified he and the victim initially drove to a friend's house to acquire some marijuana, but upon pulling up to the house realized that the friend was not at home. Richmond and the victim then left in the vehicle, and as Richmond was driving, the victim punched him a

---

[2] Although the victim continually referred to her head hitting the windshield, it is likely that the victim was describing the passenger-side door window.

7

couple of times, eventually knocking Richmond's glasses off. According to Richmond, he pulled the vehicle over to the side of the road and stopped. Richmond leaned over, opened the passenger door, and unlatched the victim's seat belt. Richmond asserted that he asked the victim to get out of the vehicle, but she refused to leave. After talking to the victim, he and the victim continued down the road, with Richmond driving. Sometime later, the victim reached over and grabbed Richmond's shirt sleeve, pulled him forward, and "she startled pummeling [him]." Specifically, Richmond claimed that the victim "started hitting [him] on the side of the head and the face, and [he] was putting [his] hand up to block her from hitting [him]." According to Richmond, the victim "kept hitting [him] . . . so [he] started to fight back." Richmond "reared back and [he] reverse punched her," and then he noted that they kept hitting one another:

| [Defense counsel]: | So the two of you were mutually hitting each other at some point? |
|---|---|
| [Richmond]: | We were going back and forth at it. |
| [Defense counsel]: | How long did that last? |
| [Richmond]: | It felt like an eternity, but I'm sure it was only just a few seconds that we were going back and forth hitting each other. |
| [Defense counsel]: | At some point did that stop? |
| [Richmond]: | It stopped I think after I felt it. I connected. I mean, I connected a really good shot. You know, I felt that it was solid; I made contact. I swung and I hit again, and I felt another solid contact that had hit. |
| | At this point I felt [the victim] stop what she was doing because she was still kind of--she was still pushing up against me, and I was still pushing back the other way. I was able to get in control of the vehicle, and I was going under the speed limit at this particular point. But she was still hanging onto me, and she was still pushing toward me as I was pushing away from her. |
| | And that up-and-under move I talked about was, I went over her shoulder and went under her elbow and grabbed her by her sweatshirt and pushed her sweatshirt back over as I was leaning on the car this way pushing her back into the seat. |

Richmond further claimed that he and the victim continued pushing each other as they made their way to Garden City.

Although Richmond claims there are distinct acts involving distinct types of force, we are not persuaded that Richmond's acts were separate offenses, rather than acts in a continual course

of conduct that resulted in one offense. Instructive of our analysis is *State v. Moffat*, 154 Idaho 529, 300 P.3d 61 (Ct. App. 2013), in which we considered whether Moffat's acts were part of a single offense or were separate offenses, as the State had argued. Moffat was charged with domestic battery and attempted strangulation following a dispute, during which he grabbed the victim by the hair, grabbed her around the throat, threw her around the room, pushed her into objects, and pushed her to the ground. Moffat appealed after the district denied his motion to dismiss the attempted strangulation charge, arguing that the prosecution for attempted strangulation placed him in double jeopardy. After determining that the Double Jeopardy Clause was implicated, we then considered whether Moffat's acts were part of a course of conduct that resulted in one offense. We considered and rejected the State's argument that Moffat had not shown that his attempted strangulation charge was predicated on the same act as his misdemeanor battery charge, relying in part on *Brown v. Ohio*, 432 U.S. 161 (1977). Specifically, we held that there were not separate criminal offenses:

> We also conclude that an attempt to separate Moffat's grabbing of his girlfriend's hair and throwing her around the room and into objects and pushing her to the ground from grabbing her throat during the same dispute is an impermissible attempt, even more pronounced than the attempt made in *Brown*, to divide a single crime into a series of temporal or spatial units to avoid double jeopardy limitations.

*Moffat*, 154 Idaho at 534, 300 P.3d at 66.

Similar to *Moffat*, Richmond is trying to divide his crime into a series of temporal or spatial units in an effort to advance his unanimity instruction argument. However, the victim's testimony only reveals a continual course of conduct that was initiated by Richmond and continued until the point that Richmond choked her with the seatbelt. Richmond's testimony, on the other hand, suggests two incidents, one occurring before Richmond stopped the vehicle and opened the victim's door, and the other occurring as Richmond and the victim were continuing down the road. However, Richmond's own testimony was that he only struck the victim in response to her "pummeling" him, which occurred during the second incident. That Richmond first "reverse punched" the victim before using the "up-and-under move" does not matter, as Richmond is simply trying to separate his course of conduct into multiple offenses. Stated differently, whether Richmond punched the victim, strangled the victim, or did both, does not

9

change the fact that these acts were done in one continuing course of action that could only result in one offense.

Richmond claims on appeal "that his case is different" than *Moffat*:

> Mr. Richmond asserts that his case is different because if the jury believed his account of the incident, [the victim] stopped punching him after he landed a couple of punches. At this point, Mr. Richmond stopped punching in self-defense. Then, however, [the victim] applied a different type of force, and Mr. Richmond responded with a different type of self-defense. Thus, while this all may have occurred during one car ride, there is separate and distinct conduct by [the victim], which, if the jury believed Mr. Richmond, led to separate and distinct acts of self-defense by Mr. Richmond.

Richmond's attempt to differentiate his case from the applicable *Moffat* analysis is unavailing, specifically due to his own testimony. Richmond claimed that the victim "pummel[ed]" him first, and that he responded by landing a few punches, including ones that "connected." Without any break in the action, Richmond testified that the victim stopped hitting him, but that "she was *still* pushing up against [him]," and then Richmond testified the next thing he did was use the "up-and-under move." (Emphasis added.) Contrary to Richmond's brief on appeal, Richmond's own testimony does not reveal a temporal break in the action nor does it reveal that the victim had applied force that she had not already been applying. In short, Richmond's punching, choking, or both of the victim was committed during a course of conduct and was chargeable as one offense. Thus, a unanimity instruction was not required. *See Severson*, 147 Idaho at 711, 215 P.3d at 431 ("An instruction informing the jury that it must unanimously agree on the specific occurrence giving rise to the offense is necessary, however, when the defendant commits several acts, each of which would independently support a conviction for the crime charged.").

### III.

### CONCLUSION

We conclude that Richmond has not shown fundamental error with the erroneous self-defense jury instruction. We also conclude that the district court did not abuse its discretion by denying Richmond's motion for new trial. Accordingly, we affirm Richmond's judgment of conviction.

Judge MELANSON **CONCURS.**

Judge GRATTON **CONCURS IN THE RESULT.**

10