**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 51102**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: June 2, 2025** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| JONATHAN TRES MANEE, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Michael J. Reardon, District Judge.

Judgment of conviction for aggravated assault on certain law enforcement personnel and use of a firearm during the commission of a crime, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Kiley A. Heffner, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kale D. Gans, Deputy Attorney General, Boise, for respondent.

---

LORELLO, Judge

Jonathan Tres Manee appeals from his judgment of conviction for aggravated assault on certain law enforcement personnel and use of a firearm during the commission of a crime. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

A police officer responded to a report of a man, later identified as Manee, standing next to a truck in the intersection of Fairview Avenue and Liberty Road in Boise. The caller reported that the truck was possibly broken down and that Manee was flagging people down as they drove by. The officer parked about twenty to thirty feet behind the truck, which was parked in the left-hand turn lane. The officer's encounter with Manee was captured on the officer's body camera. Manee

1

was standing outside the passenger side of the truck, and the officer approached from the driver's side and asked Manee if he was okay. Manee responded he was "perfectly fine" and asked the officer, "What's the point in life?" Manee asked the driver of a vehicle that pulled up beside Manee the same question. The officer asked Manee if his truck had broken down, and Manee responded that he wanted the officer to answer Manee's question first. The officer radioed dispatch to report that he was dealing with a crisis because he believed Manee was having some type of mental health crisis.

Manee said he needed help getting gas and, when the officer suggested they walk to a nearby gas station, Manee responded that he would "wait right here" in the road to make sure that his property was safe. The officer stated that being in the middle of the road was "causing a hazard," and Manee argued, "That's what you're doing as well." Manee walked toward the front of the truck and stood in the crosswalk. The officer asked Manee if his truck was out of gas, and Manee started walking toward the officer, stating that Manee was not authorized to answer that and he was "trained by the same people" as the officer. The officer introduced himself, asked Manee his name, and shook his hand. They continued to hold hands, and the officer suggested they talk elsewhere so they were "not in the middle of the road." The officer then put his hand on Manee's shoulder and grabbed his right arm. Manee pulled away from the officer saying, "No" and told the officer to get off of him. Manee then pulled a loaded gun from his pocket as the officer backed away. Manee pointed the gun at the officer. The officer immediately drew his own weapon and fired two shots at Manee, who fell to the ground wounded.

Manee was charged with aggravated assault on certain law enforcement personnel (I.C. §§ 18-915(1) and 18-905) and use of a firearm during the commission of a crime (I.C. § 19-2520). Manee pled not guilty and the case proceeded to trial. The responding officer testified and the body camera video of the incident was admitted into evidence. Manee testified to having very limited memory of the incident. On cross-examination, Manee stated that he could not remember what happened from the time the officer shook his hand "because of the trauma" and that the "next thing" he remembered was being on the ground with the gun "about 5 feet away and a car swerving around [him] in the other lane." After his testimony, Manee requested the district court give a self-defense instruction. The district court denied his request. The jury found Manee guilty of both offenses. Manee appeals.

2

## II.

## STANDARD OF REVIEW

Whether the jury has been properly instructed is a question of law over which we exercise free review. *State v. Severson*, 147 Idaho 694, 710, 215 P.3d 414, 430 (2009). When reviewing jury instructions, we ask whether the instructions as a whole, and not individually, fairly and accurately reflect applicable law. *State v. Bowman*, 124 Idaho 936, 942, 866 P.2d 193, 199 (Ct. App. 1993).

## III.

## ANALYSIS

Manee asserts the district court erred in declining to instruct the jury on self-defense. The State responds that the district court correctly concluded that the evidence did not support such an instruction. We hold that, based on the evidence presented, Manee was not entitled to a self-defense instruction.

Idaho Criminal Jury Instruction 1517 enumerates what must be proven to find that a defendant acted in self-defense: (1) the defendant must have believed that he or she was in imminent danger of bodily harm; (2) the defendant must have believed that the action taken was necessary to save him from the danger presented; (3) a reasonable person, under similar circumstances, would have believed that the defendant was in imminent danger of bodily injury and believed that the action taken was necessary; and (4) the defendant must have acted only in response to that danger and not for some other motivation. *State v. Kelly*, 158 Idaho 862, 867, 353 P.3d 1096, 1101 (Ct. App. 2015). The burden of production is on the defendant to make a prima facie showing of self-defense. *Id.*

Although each party is entitled to request the delivery of specific instructions, such instructions will only be given if they are "correct and pertinent." I.C. § 19-2132(a). A requested instruction is correct and pertinent and must be given where: (1) it properly states the governing law; (2) a reasonable view of the evidence would support the legal theory set forth in the instruction; (3) the theory is not adequately addressed by other jury instructions; and (4) the instruction does not constitute an impermissible comment on the evidence. *Kelly*, 158 Idaho at 867, 353 P.3d at 1101.

Citing *Kelly*, Manee contends he met his burden of showing a reasonable view of the evidence supported his request for the instruction because he presented some evidence of his theory of self-defense. In rejecting Manee's request for a self-defense instruction, the district court reasoned:

> There was nothing that I saw in the video that suggested that [Manee] believed he was in imminent danger of death or great bodily harm or that there was nothing in the testimony from Mr. Manee or otherwise that he believed that the action that he took was necessary to save himself from any danger.

The district court also concluded it could not provide a self-defense instruction based on Manee's state of mind because he testified that he did not have any recollection of what he was thinking after he shook the officer's hand.

Manee disagrees with the district court's reasoning, seemingly disputing that the district court applied the correct standard. Manee relies on *State v. Woodward*, 58 Idaho 385, 394, 74 P.2d 92, 96 (1937), for its holding that "the right of self-defense arises the moment an attack is made, even though the party assailed may not have reason to believe that his assailant intends to inflict upon him 'great bodily injury.'" Similarly, Manee relies on *State v. Hansen*, 133 Idaho 323, 329, 986 P.2d 346, 352 (Ct. App. 1999), for its holding that it is not necessary for a defendant to show he "reasonably feared great bodily harm in order to warrant a self-defense instruction. Rather, evidence of reasonable fear of some level of bodily harm will suffice." In *Hansen*, this Court held the district court erred when it did not give a self-defense instruction after the victim testified that the only unwanted touching from the defendant was when he pushed her onto a couch after she slapped him twice. We reasoned that a jury could infer from the victim's testimony that the defendant pushed her onto the couch to prevent her from slapping him again, and slapping the defendant was sufficient "bodily harm" from which a jury could find that shoving the victim onto the couch "was a measured and reasonable act of self-defense." *Id*.

Manee focuses on the district court's finding that the body camera video does not suggest that he believed he was in "imminent danger of death or great bodily harm." Manee correctly points out that the burden only requires evidence of reasonable fear of some level of bodily harm, and he claims he met that burden. In support, Manee argues that the officer's actions of grabbing his arm and attempting to pin him against the truck qualified as bodily harm. Manee asserts the jury could have inferred that, when he pointed a gun at the officer, it was to prevent the officer

from continuing to grab Manee to pin him against the truck. Specifically, Manee argues that the officer's continued hold on Manee's hand along with grabbing his shoulder, arm and jacket, and the officer's attempt to pin him against the front of his truck (despite Manee resisting and repeatedly telling the officer "no" and to let him go) qualifies as *some* evidence that supports his act of pointing a loaded gun at the officer was done in self-defense. We disagree.

Manee's reliance on *Hansen* for his position that the district court erred in denying his request for a self-defense instruction is misplaced. While Manee notes that *Hansen* provides the correct standard, he does not dispute, or even address, the district court's additional explanation when denying his request--that there is no evidence that Manee "believed that the action that he took was necessary to save himself from any danger." The circumstances here are not analogous to those in *Hansen* where this Court concluded that a jury could have inferred the defendant's act of pushing the victim onto a couch to prevent the victim from slapping the defendant again was a measured and reasonable act of self-defense. Manee does not argue, nor does common sense suggest, that pointing a loaded gun at an officer is a measured and reasonable response to the officer grabbing Manee's arm in the performance of the officer's lawful duties. Contrary to Manee's assertion that the officer continued to hold on to Manee despite his resistance, a review of the video from the officer's body camera video shows that the officer had let Manee go and was backing away from him before Manee pulled the gun from his pocket and pointed it at the officer.

Moreover, Manee's testimony does not provide evidence that he feared some level of bodily harm. As noted by the district court, Manee testified he had no memory beginning at the time he and the officer shook hands and ending after the officer shot Manee. There is no evidence that Manee had reasonable fear of some level of bodily harm when he drew his firearm on the officer. Because a reasonable view of the evidence does not support Manee's legal theory of self-defense, the district court did not err in denying his request for a self-defense jury instruction.

## IV.
## CONCLUSION

Manee fails to show the district court erred in declining to instruct the jury on self-defense. Accordingly, Manee's judgment of conviction for aggravated assault on certain law enforcement personnel and use of a firearm during the commission of a crime is affirmed.

Chief Judge GRATTON and Judge TRIBE, **CONCUR**.

5