# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 36926

STATE OF IDAHO,

  Respondent,

vs.

DONNA KAY THORNGREN,

  Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)

Boise, August 2010 Term

2010 Opinion No. 100

Filed: October 1, 2010

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County.  The Honorable Joel D. Horton, District Judge.

The judgment of conviction for first degree murder is <u>affirmed</u>.

Greg S. Silvey, Kuna, for appellant.

The Honorable Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent.  Kenneth K. Jorgensen argued.

_____

J. JONES, Justice.

  Donna Kay Thorngren appeals her conviction for first degree murder. We affirm.

## I.
## Factual and Procedural History

  Donna Thorngren's husband, Curtis, was murdered on January 12, 2003. A grand jury indicted Donna for Curtis' murder and indicted her son, Austin, as an accessory to murder. Donna and Austin were to be tried in a joint proceeding. However, Donna filed a pretrial motion to sever her trial from Austin's, claiming a joint trial would violate her Confrontation Clause rights. Specifically, the State sought to introduce a statement Austin made to his friend, Adam Ketterling, tending to incriminate his mother in the murder. If admitted, the statement would arguably violate Donna's Confrontation Clause rights should Austin invoke his Fifth Amendment right not to testify. The statement occurred after a conversation between Donna and Austin in a shed outside Donna's mother's home on the day Curtis was murdered, but before his

1

body was discovered. Ketterling entered the shed shortly after Donna left[1] and found Austin visibly shaken. When Ketterling asked Austin what was wrong, he said "I think my mom did it." This statement is referred to as the "shed statement." Upon further questioning of Ketterling at the grand jury hearing, Ketterling testified he believed this statement meant "she [Donna] killed his dad [Curtis] that morning."

Donna's motion to sever was heard on April 19, 2007, and at the conclusion of the hearing the district court ruled that it would sever Austin's and Donna's trials. In the context of deciding the Confrontation Clause issue, the court stated the shed statement "would not be admissible as against Donna" as an excited utterance because it was in response to a question.

The shed statement also played a part in a motion Donna filed on March 30, 2007, to dismiss the first degree murder charge against her, based upon alleged irregularities in the grand jury proceedings. Donna contended that the indictment for the first degree murder charge was based upon inadmissible evidence (the shed statement) and, in the absence of such evidence, there was insufficient evidence presented before the grand jury to support a probable cause determination. One week before trial, the district court issued its written opinion denying the motion to dismiss and holding the shed statement would be admissible as an excited utterance. Donna filed a motion for continuance arguing the changed ruling impaired her trial strategy, specifically citing only the lack of preparation for Ketterling's impeachment as a basis for granting the motion. The district court denied the motion stating that such "generalized statements as to the difficulties that the defense might face" were insufficient grounds for granting the motion. The matter proceeded to trial and Donna was convicted of first degree murder.

Donna appealed her conviction arguing the district court: (I) abused its discretion by admitting the shed statement as an excited utterance; (II) violated Donna's right to due process by changing its ruling on the shed statement one week before trial; and (III) abused its discretion in refusing to grant a continuance in light of its changed ruling. The Court of Appeals heard the appeal and affirmed Donna's conviction. Donna sought, and we granted, review.

---

[1] The parties put Ketterling in the shed anywhere from five to thirty minutes after Donna left. However, Ketterling testified before the grand jury that he returned to the shed five to ten minutes after Donna left.

## II.
## Issues on Appeal

I.      Whether the district court abused its discretion in finding that the shed statement was admissible as an excited utterance under Idaho Rule of Evidence 803(2).

II.     Whether the district court's ruling on the admissibility of the shed statement denied Donna due process.

III.    Whether the district court abused its discretion in refusing to grant a continuance.

## III.
### A.      Standard of Review

When we review a case previously decided by the Court of Appeals, "this Court gives serious consideration to the views of the Court of Appeals, but directly reviews the decision of the lower court." *In re Doe*, 144 Idaho 819, 821, 172 P.3d 1094, 1096 (2007). The district court's decision to admit evidence is reviewed for an abuse of discretion. *State v. Field*, 144 Idaho 559, 564, 165 P.3d 273, 278 (2007).

### B.      Admissibility of the Shed Statement

Donna contends the district court erred in admitting the shed statement as an excited utterance because the district court pointed out several factors cutting against its admission and then admitted it anyway. She argues that admission of the statement as an excited utterance was not harmless error because it is likely the jury would have reached a different result in the absence of the statement. The State asserts the statement is an excited utterance or, in the alternative, its admission was permissible for a non-hearsay purpose to demonstrate Donna's knowledge of Curtis' death before his body was discovered. We conclude that the district court properly admitted the shed statement as an excited utterance because news of Curtis' death was sufficiently startling to render inoperative Austin's reflective thought process and, although in response to a general question, the statement was a spontaneous reaction to his mother's apparent involvement in the murder. Because we conclude the statement qualifies as an excited utterance, we need not consider the other proffered arguments.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Idaho R. Evid. 801(c). Hearsay is inadmissible except in those circumstances provided by the Idaho Rules of Evidence. Idaho R. Evid. 802. One such circumstance arises when the statement constitutes an excited utterance. Idaho R. Evid. 803. An excited utterance is "[a] statement relating to a

3

startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Idaho R. Evid. 803(2). An excited utterance has two requirements: "(1) an occurrence or event sufficiently startling to render inoperative the normal reflective thought process of an observer; and (2) the statement of the declarant must have been a spontaneous reaction to the occurrence or event and not the result of reflective thought." *Field*, 144 Idaho at 568, 165 P.3d at 282. In determining whether a hearsay statement falls within the excited utterance exception, a court considers the totality of the circumstances, including: "the amount of time that elapsed between the startling event and the statement, the nature of the condition or event, the age and condition of the declarant, the presence or absence of self-interest, and whether the statement was volunteered or made in response to a question." *Id.* (quoting *State v. Hansen*, 133 Idaho 323, 325, 986 P.2d 346, 348 (Ct. App. 1999)).

Admission of a statement under the excited utterance exception to the hearsay rule is within the discretion of the court and will not be overturned absent an abuse of discretion. *Id.* at 567-68, 165 P.3d at 281-82. In determining whether the district court abused its discretion, this Court considers whether the district court: (1) perceived the issue as one of discretion; (2) acted within the bounds of that discretion and consistent with established legal standards; and (3) reached its decision through the exercise of reason. *Id.* at 568, 165 P.3d at 282.

The district court based its determination that the shed statement was admissible at trial as an excited utterance based upon the following portion of Ketterling's grand jury testimony:

> [State]. Where did you go?
> [Ketterling]. Back out to the shed.
> [State]. Who was in the shed?
> [Ketterling]. Austin.
> [State]. Where was he?
> [Ketterling]. Still on the couch, I believe?
> [State]. And do you remember Austin saying anything to you at that time?
> [Ketterling]. Yes. I asked him what was wrong because he was visibly shaken, and he said, I think [Donna] did it.
> [State]. Did you have any idea what he was talking about?
> [Ketterling]. Yeah. Yes, I did. I don't know, I just got the feeling right when he said it. There had been so much buildup and talk about them wanting to get [Curtis] out of the picture and all that, that I just kind of got the feeling that that's what he was talking about.
> [State]. [Ketterling], help us understand when you said, you asked him what was wrong, what was he doing to make you think something was wrong?
> [Ketterling]. He just didn't seem to be himself. He seemed down, almost in shock. He say [sic] really shaky.

4

[State]. Was he like that when he made that statement to you?
[Ketterling]. Yes.

Considering the totality of the circumstances, this testimony provides adequate foundation for admitting the shed statement as an excited utterance. Regarding the first *Field* factor of time, this testimony implies Ketterling went back to the shed shortly after Donna left. This inference is reasonable because Ketterling had walked in on the conversation between Austin and Donna and was asked by Austin if he could "give me a minute to talk to my mom." From there, Ketterling waited on the porch until Donna left and, upon seeing Donna leave, went "[b]ack out to the shed." While there is much dispute in the record about this time frame, including evidence that up to thirty minutes lapsed before Ketterling re-entered the shed, the grand jury testimony provides a reasonable basis to infer the shed statement occurred shortly after Donna spoke to Austin.

Appellant cites *State v. Hansen* to support her argument that the five to thirty minute wait before Ketterling entered the shed was long enough for Austin to reflect on the news of his father's murder and therefore invalidates the statement as an excited utterance. 133 Idaho 323, 325-26, 986 P.2d 346, 348-49 (Ct. App. 1999). In *Hansen*, the declarant walked for ten minutes before making a "protracted narrative" to a police officer regarding an altercation with her boyfriend. *Id.* at 326, 986 P.2d at 349. The Court of Appeals reasoned that the time lapse, coupled with the declarant's narrative statement, demonstrated a lack of spontaneity. *Id.* Austin's statement is distinguishable from the declarant's statement in *Hansen* because, although the time frames may be similar, the nature of Austin's statement is indicative of the more reliable "burst of words in sudden reaction to a startling occurrence . . . ." *Id.* Austin did not provide a long narrative in response to Ketterling's question but stated, while appearing shocked, that he thought his mother did it. These circumstances do not bear the indications of reflection that concerned the court in *Hansen*. Furthermore, "[t]here is no bright line rule" regarding the lapse of time between the stressful event and the making of a statement to be admissible as an excited utterance. *State v. Griffith*, 144 Idaho 356, 363, 161 P.3d 675, 682 (Ct. App. 2007). *See also State v. Bingham*, 116 Idaho 415, 421-22, 776 P.2d 424, 430-31 (1989) (affirming admission of statement made by twelve-year-old child within two hours of her molestation).

Even considering the higher end of the time lapse proposed by Donna, this Court recognizes that news of a loved one's unexpected death would be sufficiently shocking to render

5

inoperative the reflective thought process of a declarant for a brief period of time. For example, in *Griffith*, the Idaho Court of Appeals recognized that witnessing the murder of one's younger sibling would be sufficiently shocking to a child to render inoperative their ability to think reflectively about the event for several hours. 144 Idaho at 363, 161 P.3d at 682. While no one alleges Austin witnessed the murder of his father, learning of Curtis' death and of his mother's apparent involvement, would be sufficiently startling to render Austin's reflective abilities inoperative when making the statement to Ketterling.[2]

Additionally, while a declarant's youth may be a persuasive factor in determining the admissibility of an excited utterance where an amount of time has lapsed since the startling event,[3] a young adult may similarly experience the stress of a startling event sufficient to warrant application of the excited utterance exception when statements are made shortly after such an event. For example, in *State v. Hoover*, statements made by an adult abuse victim ten to fifteen minutes after the incident while still crying and hysterical were admissible as excited utterances. 138 Idaho 414, 419-20, 64 P.3d 340, 345-46 (Ct. App. 2003). Like the victim in *Hoover*, Austin made his statement while still visibly shaken shortly after learning of his father's murder. Thus, even as a mature seventeen year old, as Ketterling described him, Austin's demeanor demonstrates he remained under the stress of the news when making the statement to Ketterling.

Regarding the fourth *Field* factor, Donna asserts Austin's statement is inadmissible because it reflects the same self-interest undermining the statements made in *State v. Burton.* 115 Idaho 1154, 1156, 772 P.2d 1248, 1250 (Ct. App. 1989). In *Burton*, a father explained to his son, five minutes after shooting at two individuals involved in a bar altercation, that he had to do it in order to protect the son. 115 Idaho at 1155, 1156, 772 P.2d at 1249, 1250. The statements did not come within the excited utterance exception because they were largely self-serving, were five minutes removed from the altercation, and their exculpatory nature robbed them of the "special

---

[2] Other jurisdictions similarly recognize that news of a loved one's unexpected passing would be the type of startling event to form the basis of an excited utterance. For example, in *State v. Boldridge*, the Supreme Court of Kansas found no abuse of discretion for the admission of statements made by the deceased's sister after learning of the deceased's unexpected death by a gunshot wound to the head. 274 Kan. 795, 799, 807, 57 P.3d 8, 13, 17 (2002). *See also Pugh v. Commonwealth*, 223 Va. 663, 669, 292 S.E.2d 339, 342 (1982) (affirming admission of statement "Oh, no, not again" by a father to the defendant-mother after learning of his child's death by asphyxiation).

[3] *See State v. Parker*, 112 Idaho 1, 4, 730 P.2d 921, 924 (1986) (affirming admission of taped narrative of fourteen-year-old victim's rape, made to a family member approximately three hours after the event).

6

reliability" underlying the exception. *Id.* at 1156, 772 P.2d at 1250. Although Austin had a motive to commit the crime because he was facing an impending eviction from the family home by his father, the statement does not bear the same indicia of self-interest present in *Burton*. Unlike *Burton*, where the father made the statement to justify his act of shooting, Austin's statement does not justify his failure to report Donna's role in the crime—the crime with which Austin is ultimately charged. Rather, the statement merely identifies his mother's involvement. Furthermore, it is highly unlikely that Austin would have reflected on the exculpatory nature of the statement by invoking his mother's name when making the shed statement, and then willingly face criminal charges for subsequently failing to report her involvement.

Finally, the fact that Austin made the statement in response to an open-ended question does not deprive the statement of its spontaneity.

> The statement, to be admissible, must be spontaneous and not the product of thought and consideration. Nevertheless, it can be argued that a statement made in response to a question does not necessarily lack spontaneity, especially . . . where the questioner merely asked open-ended questions, such as "what happened?"

Jay M. Zitter, Annotation, When is Hearsay Statement Exited Utterance Admissible under Rule 803(2) of Federal Rules of Evidence, 155 A.L.R. FED. 583 (1999) (citing *U.S. v. Iron Shell*, 633 F.2d 77, 86 (8th Cir. 1980) (responding to an officer's question about "what happened" did not negate the statements qualifications as excited utterances when the young declarant spoke in short outbursts following a sexual assault)).[4] The question in this case does not undermine its spontaneity because Ketterling asked a similar open-ended question ("what was wrong") to which Austin briefly replied "I think my mom did it." Because the question was not specific or leading, and because Austin's response was brief and made while emotionally unsettled, the statement does not lack spontaneity or bear other indicia of reflective thought.

Having considered the totality of the circumstances, the record demonstrates that the district court perceived the admissibility of the shed statement as one of discretion, and reached a reasonable result within the bounds of our legal standards. As such, its admission was without error.

---

[4] The Court's prior holding that statements were inadmissible as excited utterances in *Field*, which included a statement that was in response to a question, does not alter the ruling today that a statement in response to a generic question does not *ipso facto* remove it from the excited utterance exception. 144 Idaho at 563, 165 P.3d at 277. In *Field*, the child's reluctance to answer, and the extensive passing of time before making the statement, ultimately undermined its reliability as a statement made while under the stress of a startling event.

## C.     The Due Process Claim

Donna contends that the district judge erred when he changed his mind as to the admissibility of the shed statement. She contends she was entitled to rely upon the inadmissibility of this evidence and that the district court violated her due process rights in changing its ruling one week before trial without granting her request for a continuance. The State argues that due process does not prevent a trial court from changing a pretrial ruling on the admissibility of evidence and that a decision to grant or deny a continuance rests within the sound discretion of the trial court, which discretion was not abused in this case.

"The Due Process Clause guarantees every defendant the right to a trial comporting with basic tenets of fundamental fairness." *State v. Pearce*, 146 Idaho 241, 248, 192 P.3d 1065, 1072 (2008) (holding no due process violation where the State took one position regarding the credibility of a witness during the trial against defendant and changed its position in a subsequent trial of another defendant involved in the underlying crime). However, "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." Idaho Crim. R. 52. *See also State v. Wright*, 97 Idaho 229, 231, 542 P.2d 63, 65 (1975) ("Error in the abstract does not necessarily rise to the level of constitutional dimensions unless and until a defendant properly presents specific prejudice resulting from such error."), *distinguished on other grounds by State v. Walters*, 120 Idaho 46, 813 P.2d 857 (1990). When considering alleged violations of constitutional rights, this Court defers to the district court's findings of fact unless clearly erroneous, but "exercise[s] free review over the trial court's determination as to whether constitutional requirements have been satisfied in light of the facts found." *Pearce*, 146 Idaho at 248, 192 P.3d at 1072 (citation omitted).

The district court's initial "ruling" on the shed statement merely served as a backdrop for its determination of the motion to sever the trials, and was not a definitive ruling on the ultimate admissibility of the shed statement. The court's comments concerning the admissibility of the shed statement were made in the context of Sixth Amendment analysis to determine whether Donna's Confrontation Clause rights would be violated were she to be tried jointly with Austin. The district court stated, in explaining why it was granting the motion to sever: "The reason is, notwithstanding a well-advanced argument that the statements in the shed are admissible under 803, Subsection 2, in my view, they would not be admissible as against Donna, under 803, Subsection 2." Even though the admissibility of the shed statement was a matter of discussion in

8

the district court's ruling, the only matter before the court when making its ruling was the motion to sever. Therefore, Donna's continuing reliance on the shed statement's inadmissibility was misplaced.

Further, while Donna cites *United States v. Mejia-Alarcon* to suggest parties can rely on pretrial rulings, this case is not only distinguishable, but it actually demonstrates the unreasonableness of her reliance on the first ruling. In *Mejia*, the court denied the defendant's motion in limine seeking to exclude certain convictions of the defendant for impeachment at trial. 995 F.2d 982, 985 (10th Cir. 1993). Because of this ruling, the defendant not only failed to object to the admission of the conviction but actually raised it on direct examination. *Id.* The Tenth Circuit held that, although defendant did not object during trial, he could rely on the denial of his pretrial motion as a basis to preserve the issue for appeal reasoning that "an absolute rule holding that motions in limine may never preserve an objection is a trap for the unwary, who *sensibly rely* on a *definitive*, well-thought-out pretrial ruling on a subject that will not be affected by the evidence that comes in at trial." *Id.* at 986 (emphasis added). Because the pretrial ruling in this case was not definitive on the issue of the admissibility of the shed statement, but rather concerned whether Donna and Austin should be tried separately, Donna was not in a position to "sensibly rely" on the definitiveness of the ruling like the defendant in *Mejia*.

In this case, the district court's initial ruling focused primarily on the fact that the shed statement was made in response to a question. The judge stated: "I know the defense wants to focus on duration of time, but it seems to me that the Hansen decision wasn't so much a set of the circumstances of ten minutes having passed, but the circumstances under which the statements were made that reflected a response to questioning." However, as previously discussed, the presence of an open-ended question does not negate a statement's admissibility as an excited utterance where it still bears the requisite indicia of spontaneity, such as the shed statement in this case. Thus, the district court was within its discretion, and had a compelling reason, to change its ruling when grounded in a more accurate understanding of the law.[5]

---

[5] Donna also cites *Cargill, Inc. v. Sears Petroleum & Transport Corp.*, to suggest that a court has the discretion to change a pretrial ruling that would otherwise establish the law of the case, but generally should decline to do so absent compelling reasons, "such as an intervening change of controlling law, the introduction of new evidence, or the need to correct a clear error or prevent manifest injustice." 334 F. Supp. 2d 197, 243 (N.D.N.Y. 2004). However, *Cargill* is very clear that the law of the case doctrine is purely discretionary and a court is within its power to change a pretrial ruling at any time prior to issuing a final judgment in the case, and is especially warranted when the change is needed to correct a clear error. *Id.* Although New York's limits on its law of the case doctrine are not

Moreover, even if the district court did definitively rule on the admissibility of the shed statement, a party must be mindful of a court's discretion to change its own pretrial rulings, especially evidentiary rulings. *See*, *e.g.*, *Ritter v. State*, 272 Ga. 551, 553, 532 S.E.2d 692, 695 (2000) ("[A] court retains broad discretion over interlocutory evidentiary rulings which may be modified at any time until entry of final judgment."). In fact, when specifically dealing with evidentiary rulings in criminal trials, the Vermont Supreme Court noted "pretrial rulings are provisional, and are subject to later modification. Thus, a ruling on a pretrial motion to exclude evidence is tentative and subject to revision at trial." *State v. Streich*, 163 Vt. 331, 349, 658 A.2d 38, 50 (1995) (citation omitted). Based on this rule, the *Streich* court held that a criminal defendant cannot claim a due process violation based on a defendant's reliance on a pretrial evidentiary ruling that is subsequently changed. *Id.* In sum, pretrial evidentiary rulings are subject to the discretion of the court and may be changed, for example, when the court finds a more accurate interpretation of the law warrants a new ruling on the issue. *See Ritter*, 272 Ga. at 553, 532 S.E.2d at 695 (quoting *Bradley v. Tattnall Bank*, 170 Ga. App. 821(1), 318 S.E.2d 657 (1984) ("[T]he 'law of the case' rule is subject to the power of the court, and the court may, in a proper case disregard or correct its former decision where the cause remains pending before it.")). Donna was not deprived of due process when the court changed its ruling because, as stated in *Streich,* reliance to that extent is not warranted in the case of a pretrial evidentiary ruling.

Donna further argues that denial of her motion for continuance deprived her of the opportunity to adequately prepare to impeach Ketterling about the shed statement, thereby violating her due process right to a fair trial. However, Donna fails to demonstrate that the district court abused its discretion in denying the continuance. The decision to grant or deny a motion for continuance is within the discretion of the district court. *State v. Payne*, 146 Idaho 548, 567, 199 P.3d 123, 142 (2008). In determining whether the district court abused its discretion, this Court considers whether the district court: (1) perceived the issue as one of discretion; (2) acted within the bounds of that discretion and consistent with established legal standards; and (3) reached its decision through the exercise of reason. *Id.* In the context of a motion for a continuance, an appellant must show that his or her substantial rights were

---

binding on this Court, the district court in this instance had a compelling reason to change its pretrial ruling after reconsidering the reliability of Austin's statement.

prejudiced by reason of the denial of a motion for continuance. *State v. Evans*, 129 Idaho 758, 762, 932 P.2d 881, 885 (1997).

Donna has failed to demonstrate that her substantial rights were prejudiced by the denial of her motion for continuance. When arguing the motion before the district court, Donna's counsel vaguely referenced the impingement on trial strategies as a basis for potential prejudice, and only specifically referenced his lack of preparation for impeaching Ketterling. However, Ketterling was thoroughly impeached at trial, which supports a finding of no prejudice.[6] Even at oral argument before this Court, almost three years after the initial hearing on the matter, Donna's counsel was still unable to identify a single change in evidence or trial tactics that would have been made had the motion for continuance been granted. Furthermore, Donna's failure to raise and pursue the issue immediately after her conviction and before sentencing, provides additional assurance that Donna suffered no prejudice as a result of this ruling.

The transcripts demonstrate the district court acted within its discretion in denying the continuance.

> It seems to me that this motion is very much predicated upon expectations as to how the Court might rule, most specifically as it relates to the State's motion to compel and grant immunity to [Austin] in connection with his testimony in the trial of his codefendant.
>
> I can't begin to speak as to the basis of the expectations that that motion to continue might be denied but it was certainly the confrontation issues that prompted this Court's decision to sever this matter. At this point, I am not satisfied that there is good cause for showing of continuance of trial. The motion is denied. . . .
>
> But I will make this other observation that although there has been a discussion as to the impact on the parties given the anticipated length of trial, the Court's schedule also dictates that this matter move along because I have a lot of other litigation that has piled up and being bulldozed by the existence of this litigation.
>
> The Court's concerns, while not trumping [Donna's] due process rights, are significant absent a clear showing of demonstrable prejudice rather than

---

[6] Donna was allowed to present a great deal of evidence undermining Ketterling's credibility, including the fact that Ketterling did not have a complete memory of what happened because he was smoking marijuana and methamphetamine and drinking alcohol the night before the statement, was not sure if he had slept the night before the statement, had previously lied to Donna and readily agreed to lie about material events when instructed to do so by the police, was still high at the time the shed statement was made and did not remember the exact wording of the statement, failed to disclose to the police that he was high on methamphetamine when he made his statement, agreed to give a voluntary statement to the police in order to avoid execution of an outstanding arrest warrant, was unsure of who was present around the time the shed statement was made, and was unsure of the time frame between Donna leaving the shed and his entry into the shed. This evidence is damaging to Ketterling's credibility and would have allowed the jury to give little weight to his testimony.

generalized statements as to the difficulties the defense might face in recognizing that the defense has clearly been on notice for a week prior to the commencement of this trial and given the fact that the first day of trial will be devoted to jury selection.

The district court did not abuse its discretion in denying the motion because it recognized the standard for determining whether a motion for continuance should be granted and, through the exercise of reason and consistent with applicable legal standards, determined that Donna failed to demonstrate she would be prejudiced in a substantial right absent a continuance.

## IV.
## Conclusion

Because the shed statement was properly admitted and Donna failed to demonstrate a denial of due process or of prejudice from the denial of her motion for continuance, her judgment of conviction is affirmed.

Chief Justice EISMANN, and Justices BURDICK, W. JONES, and Justice Pro Tem KIDWELL CONCUR.

12