IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 39596

| DONNA KAY THORNGREN, | ) | 2013 Unpublished Opinion No. 735 |
|---|---|---|
| | ) | |
| Petitioner-Appellant, | ) | Filed: October 31, 2013 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| STATE OF IDAHO, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Respondent. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Timothy Hansen, District Judge.

Judgment dismissing amended petition for post-conviction relief, <u>affirmed</u>.

Greg S. Silvey, Star, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Chief Judge

Donna Kay Thorngren appeals from the judgment dismissing her amended petition for post-conviction relief. On appeal, Thorngren argues the district court erred by granting summary dismissal of Thorngren's claim of ineffective assistance of defense counsel. For the reasons that follow, we affirm.

## I.

## FACTS AND PROCEDURE

Underlying this post-conviction relief action is Thorngren's conviction of first degree murder. The facts of the first degree murder trial, as previously set forth by the Idaho Supreme Court, are as follows:

> Donna Thorngren's husband, Curtis, was murdered on January 12, 2003. A grand jury indicted Donna for Curtis' murder and indicted her son, Austin, as an accessory to murder. Donna and Austin were to be tried in a joint proceeding. However, Donna filed a pretrial motion to sever her trial from Austin's, claiming a joint trial would violate her Confrontation Clause rights. Specifically, the State sought to introduce a statement Austin made to his friend, Adam Ketterling,

1

tending to incriminate his mother in the murder. If admitted, the statement would arguably violate Donna's Confrontation Clause rights should Austin invoke his Fifth Amendment right not to testify. The statement occurred after a conversation between Donna and Austin in a shed outside Donna's mother's home on the day Curtis was murdered, but before his body was discovered. Ketterling entered the shed shortly after Donna left and found Austin visibly shaken. When Ketterling asked Austin what was wrong, he said "I think my mom did it." This statement is referred to as the "shed statement." Upon further questioning of Ketterling at the grand jury hearing, Ketterling testified he believed this statement meant "she [Donna] killed his dad [Curtis] that morning."

Donna's motion to sever was heard on April 19, 2007, and at the conclusion of the hearing the district court ruled that it would sever Austin's and Donna's trials. In the context of deciding the Confrontation Clause issue, the court stated the shed statement "would not be admissible as against Donna" as an excited utterance because it was in response to a question.

The shed statement also played a part in a motion Donna filed on March 30, 2007, to dismiss the first degree murder charge against her, based upon alleged irregularities in the grand jury proceedings. Donna contended that the indictment for the first degree murder charge was based upon inadmissible evidence (the shed statement) and, in the absence of such evidence, there was insufficient evidence presented before the grand jury to support a probable cause determination. One week before trial, the district court issued its written opinion denying the motion to dismiss and holding the shed statement would be admissible as an excited utterance. Donna filed a motion for continuance arguing the changed ruling impaired her trial strategy, specifically citing only the lack of preparation for Ketterling's impeachment as a basis for granting the motion. The district court denied the motion stating that such "generalized statements as to the difficulties that the defense might face" were insufficient grounds for granting the motion. The matter proceeded to trial and Donna was convicted of first degree murder.

*State v. Thorngren*, 149 Idaho 729, 730-31, 240 P.3d 575, 576-77 (2010) (alterations in original) (footnote omitted).

Thorngren appealed from the judgment of conviction, contending the trial court abused its discretion in concluding the shed statement was an excited utterance, the trial court violated Thorngren's right to due process by reversing an earlier ruling that the statement was inadmissible hearsay, and the trial court abused its discretion by refusing to grant a continuance. This Court affirmed the judgment of conviction in an unpublished opinion. *State v. Thorngren*, Docket No. 34806 (Ct. App. Jun. 24, 2009). The Idaho Supreme Court granted review of the case and also affirmed the judgment of conviction. *Thorngren*, 149 Idaho 729, 240 P.3d 575.

Following the Supreme Court's affirmance, Thorngren filed a pro se petition for post-conviction relief. In support of her petition, Thorngren included affidavits from Austin Thorngren and Amber Whitmore. The affidavits contained statements that seemingly contradicted Ketterling's trial testimony. The district court appointed counsel for Thorngren, and Thorngren filed an amended petition for post-conviction relief. In her amended petition, Thorngren argued her defense counsel provided ineffective assistance of counsel, claiming her counsel (1) failed to obtain evidence that would impeach the shed statement at trial or render the shed statement inadmissible at trial as a result of her defense counsel's reliance on the trial court's earlier pronouncement concerning the shed statement; (2) failed to properly articulate the need for additional time to investigate the shed statement in the motion for continuance; (3) failed to hire expert witnesses to review the State's evidence; (4) failed to hire an investigator for the case; and (5) failed to adequately interview fifteen witnesses. The State answered and moved for summary dismissal. After a hearing on the motion, the district court determined: (1) Thorngren could not show she was prejudiced by her defense counsel's reliance on the trial court's initial pronouncement concerning the shed statement; (2) Thorngren could not show additional arguments would have been meritorious in granting a continuance nor show the outcome of the trial would have been different had a continuance been granted; (3) Thorngren failed to identify what testimony an expert witness could have provided; (4) Thorngren failed to identify how hiring an investigator would likely have changed the outcome of the trial; and (5) Thorngren failed to articulate how the testimony of the majority of the witnesses would affect the outcome of trial, and as to Austin and Amber, failed to show prejudice. The district court granted the motion for summary dismissal and entered a judgment dismissing Thorngren's amended petition for post-conviction relief. Thorngren appeals.

## II.

## STANDARD OF REVIEW

A petition for post-conviction relief initiates a civil, rather than criminal, proceeding, governed by the Idaho Rules of Civil Procedure. *State v. Yakovac*, 145 Idaho 437, 443, 180 P.3d 476, 482 (2008). *See also Pizzuto v. State*, 146 Idaho 720, 724, 202 P.3d 642, 646 (2008). Like plaintiffs in other civil actions, the petitioner must prove by a preponderance of evidence the allegations upon which the request for post-conviction relief is based. Idaho Code § 19-4907; *Stuart v. State*, 118 Idaho 865, 869, 801 P.2d 1216, 1220 (1990); *Goodwin v. State*, 138 Idaho

3

269, 271, 61 P.3d 626, 628 (Ct. App. 2002). A petition for post-conviction relief differs from a complaint in an ordinary civil action, however, in that it must contain more than "a short and plain statement of the claim" that would suffice for a complaint under Idaho Rule of Civil Procedure 8(a)(1). *State v. Payne*, 146 Idaho 548, 560, 199 P.3d 123, 135 (2008); *Goodwin*, 138 Idaho at 271, 61 P.3d at 628. The petition must be verified with respect to facts within the personal knowledge of the petitioner, and affidavits, records or other evidence supporting its allegations must be attached, or the petition must state why such supporting evidence is not included. I.C. § 19-4903. In other words, the petition must present or be accompanied by admissible evidence supporting its allegations or it will be subject to dismissal. *Wolf v. State*, 152 Idaho 64, 67, 266 P.3d 1169, 1172 (Ct. App. 2011); *Roman v. State*, 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct. App. 1994).

Idaho Code § 19-4906(c) authorizes summary dismissal of a petition for post-conviction relief, either pursuant to motion of a party or upon the court's own initiative, if "it appears from the pleadings, depositions, answers to interrogatories, and admissions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." When considering summary dismissal, the district court must construe disputed facts in the petitioner's favor, but the court is not required to accept either the petitioner's mere conclusory allegations, unsupported by admissible evidence, or the petitioner's conclusions of law. *Payne*, 146 Idaho at 561, 199 P.3d at 136; *Roman*, 125 Idaho at 647, 873 P.2d at 901. Moreover, because the district court rather than a jury will be the trier of fact in the event of an evidentiary hearing, the district court is not constrained to draw inferences in the petitioner's favor, but is free to arrive at the most probable inferences to be drawn from the evidence. *Yakovac*, 145 Idaho at 444, 180 P.3d at 483; *Wolf*, 152 Idaho at 67, 266 P.3d at 1172; *Hayes v. State*, 146 Idaho 353, 355, 195 P.3d 712, 714 (Ct. App. 2008). Such inferences will not be disturbed on appeal if the uncontroverted evidence is sufficient to justify them. *Chavez v. Barrus*, 146 Idaho 212, 218, 192 P.3d 1036, 1042 (2008); *Hayes*, 146 Idaho at 355, 195 P.2d at 714; *Farnsworth v. Dairymen's Creamery Ass'n*, 125 Idaho 866, 868, 876 P.2d 148, 150 (Ct. App. 1994).

Claims may be summarily dismissed if the petitioner's allegations are clearly disproven by the record of the criminal proceedings, if the petitioner has not presented evidence making a prima facie case as to each essential element of the claims, or if the petitioner's allegations do

4

not justify relief as a matter of law. *Kelly v. State*, 149 Idaho 517, 521, 236 P.3d 1277, 1281 (2010); *McKay v. State*, 148 Idaho 567, 570, 225 P.3d 700, 703 (2010); *DeRushé v. State*, 146 Idaho 599, 603, 200 P.3d 1148, 1152 (2009); *Charboneau v. State*, 144 Idaho 900, 903, 174 P.3d 870, 873 (2007); *Berg v. State*, 131 Idaho 517, 518, 960 P.2d 738, 739 (1998); *Murphy v. State*, 143 Idaho 139, 145, 139 P.3d 741, 747 (Ct. App. 2006); *Cootz v. State*, 129 Idaho 360, 368, 924 P.2d 622, 630 (Ct. App. 1996). Thus, summary dismissal of a claim for post-conviction relief is appropriate when the court can conclude, as a matter of law, that the petitioner is not entitled to relief even with all disputed facts construed in the petitioner's favor. For this reason, summary dismissal of a post-conviction petition may be appropriate even when the State does not controvert the petitioner's evidence. *See Payne*, 146 Idaho at 561, 199 P.3d at 136; *Roman*, 125 Idaho at 647, 873 P.2d at 901.

Conversely, if the petition, affidavits and other evidence supporting the petition allege facts that, if true, would entitle the petitioner to relief, the post-conviction claim may not be summarily dismissed. *Charboneau v. State*, 140 Idaho 789, 792, 102 P.3d 1108, 1111 (2004); *Berg*, 131 Idaho at 519, 960 P.2d at 740; *Stuart v. State*, 118 Idaho 932, 934, 801 P.2d 1283, 1285 (1990); *Sheahan v. State*, 146 Idaho 101, 104, 190 P.3d 920, 923 (Ct. App. 2008); *Roman*, 125 Idaho at 647, 873 P.2d at 901. If a genuine issue of material fact is presented, an evidentiary hearing must be conducted to resolve the factual issues. *Kelly*, 149 Idaho at 521, 236 P.3d at 1281; *Payne*, 146 Idaho at 561, 199 P.3d at 136; *Goodwin*, 138 Idaho at 272, 61 P.3d at 629.

On appeal from an order of summary dismissal, we apply the same standards utilized by the trial courts and examine whether the petitioner's admissible evidence asserts facts which, if true, would entitle the petitioner to relief. *Ridgley v. State*, 148 Idaho 671, 675, 227 P.3d 925, 929 (2010); *Berg*, 131 Idaho at 519, 960 P.2d at 740; *Sheahan*, 146 Idaho at 104, 190 P.3d at 923; *Roman*, 125 Idaho at 647, 873 P.2d at 901. Over questions of law, we exercise free review. *Rhoades v. State*, 148 Idaho 247, 250, 220 P.3d 1066, 1069 (2009); *Downing v. State*, 136 Idaho 367, 370, 33 P.3d 841, 844 (Ct. App. 2001); *Martinez v. State*, 130 Idaho 530, 532, 944 P.2d 127, 129 (Ct. App. 1997).

### III.

### ANALYSIS

On appeal, Thorngren argues the district court erred by granting summary dismissal of her ineffective assistance of counsel claim. Specifically, Thorngren maintains that her defense

5

counsel provided ineffective assistance of counsel by: (1) failing to obtain evidence that would impeach the shed statement at trial or would render the shed statement inadmissible, as a result of her defense counsel's reliance on the trial court's pronouncement concerning the admissibility of the shed statement; (2) failing to make specific arguments in moving for a continuance after the trial court ruled the shed statement was admissible; and (3) failing to interview several witnesses regarding the shed statement.[1]

A claim of ineffective assistance of counsel may properly be brought under the Uniform Post-Conviction Procedure Act. *Barcella v. State*, 148 Idaho 469, 477, 224 P.3d 536, 544 (Ct. App. 2009). To prevail on an ineffective assistance of counsel claim, the petitioner must show that the attorney's performance was deficient and that the petitioner was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Self v. State*, 145 Idaho 578, 580, 181 P.3d 504, 506 (Ct. App. 2007). To establish a deficiency, the petitioner has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Knutsen v. State*, 144 Idaho 433, 442, 163 P.3d 222, 231 (Ct. App. 2007). This Court has long adhered to the proposition that tactical or strategic decisions of defense counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *Gonzales v. State*, 151 Idaho 168, 172, 254 P.3d 69, 73 (Ct. App. 2011). Determining whether an attorney's pretrial preparation falls below a level of reasonable performance constitutes a question of law, but is essentially premised upon the circumstances surrounding the attorney's investigation. *Thomas v. State*, 145 Idaho 765, 769, 185 P.3d 921, 925 (Ct. App. 2008). To prevail on a claim that counsel's performance was deficient for failing to interview witnesses, a petitioner must establish that the inadequacies complained of would have made a difference in the outcome of trial. *Id.* It is not sufficient merely to allege that counsel may have discovered a weakness in the State's case. *Id.* We will not second-guess defense counsel in the particularities of trial preparation. *Id.*

---

[1] Thorngren does not challenge the district court's summary dismissal of her claims that her defense counsel provided ineffective assistance of counsel by failing hire expert witnesses to review the State's evidence and failing to hire an investigator. As such, we do not address these claims on appeal.

6

To show prejudice, the petitioner must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different.[2] *Dunlap v. State*, 141 Idaho 50, 59, 106 P.3d 376, 385 (2004). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen v. Pinholster*, ___ U.S. ___, ___, 131 S. Ct. 1388, 1403 (2011) (quoting *Strickland*, 466 U.S. at 694). This "requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Id.* (citing *Harrington v. Richter*, ___ U.S. ___, ___, 131 S. Ct. 770, 791 (2011)).

Thorngren argues her defense counsel's reliance on the trial court's initial pronouncement excluding the shed statement was misplaced. Thorngren contends that had her defense counsel not relied on the initial pronouncement, defense counsel would have discovered additional evidence pertaining to the shed statement, namely evidence from Austin and Amber.

---

[2]    In *Lafler v. Cooper*, ____ U.S. ____, 132 S. Ct. 1376 (2012) Justice Scalia dissented from the Court's holding, but offered the following detailed discussion of *Strickland* prejudice:

> Since "the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial," *United States v. Cronic*, 466 U.S. 648, 658, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984), the "benchmark" inquiry in evaluating any claim of ineffective assistance is whether counsel's performance "so undermined the proper functioning of the adversarial process" that it failed to produce a reliably "just result." *Strickland*, 466 U.S., at 686, 104 S. Ct. 2052. That is what *Strickland*'s requirement of "prejudice" consists of: Because the right to effective assistance has as its purpose the assurance of a fair trial, the right is not infringed unless counsel's mistakes call into question the basic justice of a defendant's conviction or sentence. That has been, until today, entirely clear. A defendant must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687, 104 S. Ct. 2052. *See also [United States v. Gonzalez-Lopez*, 548 U.S. 140, 147 (2006)]. Impairment of fair trial is how we distinguish between unfortunate attorney error and error of constitutional significance.
>
>     To be sure, *Strickland* stated a rule of thumb for measuring prejudice which, applied blindly and out of context, could support the Court's holding today: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S., at 694, 104 S. Ct. 2052. *Strickland* itself cautioned, however, that its test was not to be applied in a mechanical fashion, and that courts were not to divert their "ultimate focus" from "the fundamental fairness of the proceeding whose result is being challenged." *Id.*, at 696, 104 S. Ct. 2052.

*Lafler*, ___ U.S. at ___, 132 S. Ct. at 1393-94 (Scalia, J., dissenting) (footnote omitted).

7

This evidence, according to Thorngren, would have rendered the shed statement inadmissible or would have impeached the shed statement at trial.

The shed statement was a point of contention in Thorngren's direct appeal. When the Idaho Supreme Court reviewed the matter, the Court held the shed statement was admissible as an excited utterance under the *State v. Field*, 144 Idaho 559, 568, 165 P.3d 273, 282 (2007) totality-of-the-circumstances test. *Thorngren*, 149 Idaho at 732-34, 240 P.3d at 578-80. Thorngren had argued the trial court's reversal of its earlier decision concerning the shed statement denied her due process of law. The Supreme Court determined, "The district court's initial 'ruling' on the shed statement merely served as a backdrop for its determination of the motion to sever the trials, and was not a definitive ruling on the ultimate admissibility of the shed statement." *Id.* at 735, 240 P.3d at 581. In dicta, the Supreme Court further stated, "Even though the admissibility of the shed statement was a matter of discussion in the district court's ruling, the only matter before the court when making its ruling was the motion to sever. Therefore, Donna's continuing reliance on the shed statement's inadmissibility was misplaced." *Id.* The Supreme Court concluded Thorngren was not denied due process of law because "a ruling on a pretrial motion to exclude evidence is tentative and subject to revision at trial" and because her attorney's reliance on the pretrial evidentiary ruling was not warranted. *Id.* at 736, 240 P.3d at 582 (quoting *State v. Streich*, 658 A.2d 38, 50 (Vt. 1995)).

The Supreme Court also reviewed whether Thorngren's due process rights were violated by the trial court's denial of Thorngren's motion for a continuance and found there was no violation. The Supreme Court primarily relied on its determination that "Ketterling was *thoroughly impeached at trial*, which supports a finding of no [due process] prejudice." *Id.* (emphasis added). The Supreme Court provided a footnote to explain how Ketterling was thoroughly impeached:

> Donna was allowed to present a great deal of evidence undermining Ketterling's credibility, including the fact that Ketterling did not have a complete memory of what happened because he was smoking marijuana and methamphetamine and drinking alcohol the night before the statement, was not sure if he had slept the night before the statement, had previously lied to Donna and readily agreed to lie about material events when instructed to do so by the police, was still high at the time the shed statement was made and did not remember the exact wording of the statement, failed to disclose to the police that he was high on methamphetamine when he made his statement, agreed to give a voluntary statement to the police in order to avoid execution of an outstanding

8

arrest warrant, was unsure of who was present around the time the shed statement was made, and was unsure of the time frame between Donna leaving the shed and his entry into the shed. This evidence is damaging to Ketterling's credibility and *would have allowed the jury to give little weight to his testimony.*

*Id.* at 736 n.6, 240 P.3d at 582 n.6 (emphasis added).

Based on the Supreme Court's finding that Ketterling was thoroughly impeached, the district court, in summarily dismissing Thorngren's petition for post-conviction relief, determined that even if Thorngren's defense counsel had not relied on the original pronouncement, but instead discovered the additional evidence Austin and Amber attested to in their affidavits, there would have been no prejudice. However, Thorngren asserts the shed statement, itself, was not impeached, as it could have been had her defense counsel not relied on the trial court's pronouncement and, instead, interviewed Amber and Austin. *Strickland* requires Thorngren to demonstrate *both* prongs of deficiency and prejudice. Because it is dispositive, we address only whether Thorngren has established the prejudice prong. *Ridgley*, 148 Idaho at 676, 227 P.3d at 930.

Initially, we address Thorngren's argument that the shed statement would have been rendered inadmissible had her defense counsel found other evidence from Austin and Amber concerning the shed statement. On direct appeal, the Idaho Supreme Court decided the statement was properly admitted. *Thorngren*, 149 Idaho at 734, 240 P.3d at 580. The additional evidence that Thorngren argues her trial attorney would have found would not have gone to the admissibility of the shed statement, but would have instead gone to credibility of the witness, which we address below.

Assuming Thorngren's defense counsel had not relied on the original pronouncement, but instead, discovered the additional evidence from Austin and Amber that seemingly conflicted with Ketterling's shed statement, we are persuaded that there is not a reasonable probability that the outcome of the trial would have been different. Additional evidence from Austin and Amber, as evidenced by the affidavits submitted with Thorngren's petition for post-conviction relief, would have gone to the credibility of Ketterling's testimony at trial, including his testimony regarding the shed statement. Indeed, the additional evidence from Austin and Amber would have added to the other credibility issues of Ketterling's testimony that were already raised by Thorngren's defense counsel. As the Supreme Court recognized, Ketterling's testimony had already been thoroughly impeached and would have allowed the jury to give little weight to his

9

testimony. *Id.* at 736 n.6, 240 P.3d at 582 n.6. Thus, Thorngren cannot show that the additional testimony offered by Austin, Amber, or both, would have, with a reasonably probability, changed the outcome of the proceeding. *Compare Sully v. Ayers*, 725 F.3d 1057, 1073-74 (9th Cir. 2013) (affirming denial of writ of habeas corpus based, in part, on counsel's failure to impeach a witness where counsel had already extensively impeached the witness), *with People v. Armstrong*, 806 N.W.2d 676, 681-82 (Mich. 2011) (determining the witness was not thoroughly impeached but was only attacked with "he said, she said" testimony and finding prejudice was shown based on counsel's failure to introduce impeaching evidence).

Thorngren further argues her defense counsel should have taken a different approach in arguing for a continuance after the trial court determined the shed statement to be admissible. Specifically, Thorngren contends her defense counsel should have articulated that he needed to investigate the shed statement and interview witnesses possibly related to the shed statement. According to Thorngren, it is likely the trial court would have granted the continuance and her defense counsel would have obtained additional impeachment evidence. We already determined that the additional evidence Thorngren argues her defense counsel could have discovered with additional time does not correlate to a finding of prejudice. Thus, we cannot say there is a reasonable probability that the outcome of the trial would have been different had Thorngren's defense counsel articulated specific reasons why a continuance was needed after the trial court found the shed statement to be admissible.

Lastly, Thorngren contends her defense counsel failed to interview additional witnesses. The district court determined Thorngren had not submitted affidavits indicating what the witnesses would have testified to for most of the individuals Thorngren listed as potential witnesses. Because the record lacks any evidence of what the witnesses would have testified to, we cannot say there is a reasonable probability that the outcome of the trial would have been different had Thorngren's defense counsel interviewed the additional witnesses identified by Thorngren.

## IV.

## CONCLUSION

We conclude Thorngren failed to establish prejudice from her defense counsel's alleged deficient performance. Ketterling had already been thoroughly impeached and there is not a reasonable probability the additional evidence identified by Thorngren would have changed the

10

outcome of the trial. The district court correctly determined that no genuine issue of material fact was raised in Thorngren's amended petition for post-conviction relief. Accordingly, the district court's judgment dismissing Thorngren's amended petition for post-conviction relief is affirmed.

Judge MELANSON **CONCURS**.

Judge LANSING **CONCURS IN THE RESULT**.